UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| GAIL SCHECHTER, )<br>6 Burns St. )<br>Forest Hills, NY 11375 )<br>   )<br>   *Plaintiff*, )<br>   )<br>v. )<br>   )<br>DOUGLAS COLLINS, )<br>Secretary of the Veterans' Administration )<br>   )<br>   *Defendant*. )<br>   )<br>Serve: )<br>Executive Office for the United )<br>States Attorney )<br>Civil Process Clerk )<br>601 D St. NW )<br>Room 2242 )<br>Washington, DC 20530-0001 )<br>   )<br>United States Department of Justice )<br>950 Pennsylvania Avenue NW )<br>Washington, DC 20530-0001 )<br>   )<br>Department of Veterans' Affairs )<br>Office of the General Counsel )<br>810 Vermont Avenue, NW )<br>Washington, DC 20420 )<br>_____) | Case No.<br><br>JURY TRIAL DEMANDED |

# **COMPLAINT**

Comes now Plaintiff, Gail Schechter (hereinafter "Ms. Schechter" or "Plaintiff"), with her Complaint for injunctive and/or declaratory relief, and whatever additional relief deemed appropriate by this Court, and states as follows:

1

## **NATURE OF CASE**

Until Thursday February 13, 2025, Plaintiff was a full time permanent employee of the Department of Veterans Affairs (hereinafter "VA"), working in the North Atlantic District of the Office of General Counsel (hereinafter "OGC"). On that day, Plaintiff received an electronic communication informing her that she was being terminated for poor performance. That was the first communication Plaintiff ever received that her performance was unsatisfactory.

To the contrary, on or about February 6, 2025, Plaintiff received a MicroSoft Teams message and a text message from her supervisor specifically advising her that she was doing a good job. Plaintiff has been employed with the VA since March of 2006 with no break in service, but had only been with the VA OGC since May of 2024. According to Defendant, this placed Plaintiff in a "probationary" status, in which she did not have job protections afforded to permanent employees.

The letter Plaintiff received indicated that she could only appeal the termination decision to the Merit System Protection Board (hereinafter "MSPB") if she believed she was terminated due to her marital status or if she believed the termination was "partisan." Plaintiff brings this case alleging that her termination violated her rights under the Fifth Amendment to the Constitution and the Administrative Procedures Act 5 U.S.C. § 706(2), and that Defendant's classification of Plaintiff as a conditional or "probationary" employee without job protections was arbitrary, capricious and without basis in fact.

Plaintiff further alleges that the procedural protections afforded even to probationary employees in 5 C.F.R. §315.804 requires there to be a legitimate, factually based reason for asserting that an employee's performance or conduct was unsatisfactory, and that it does not suffice for the agency to simply write the words unsatisfactory performance on a termination

notice. The evidence in this case will demonstrate beyond debate that Plaintiff was an excellent performer, and that Defendant's motives in terminating her employment had nothing to do with her skills, ability, or efforts.

Rather, Defendant's excuse for termination of Plaintiff was pretext for an unlawful purpose, and should be fully rejected by this Court. Plaintiff seeks injunctive and/or declaratory relief from this Court reinstating her to her position at the VA, and all other remedies deemed appropriate by this Court.

**PARTIES**

1. Plaintiff is a resident of the State of New York, who works in a hybrid/telework position. She is an attorney, and a member of the bar of the State of New York, as well as a registered dietician.

2. Defendant is the Secretary of the Veterans Administration, an Agency of the United States of America, with headquarters in the District of Columbia.

**JURISDICTION & VENUE**

3. This Court has subject matter jurisdiction under 28 U.S.C. § 1331 because Plaintiff's causes of action arise under the Constitution and laws of the United States. The Court also has jurisdiction under 28 U.S.C. § 1361 because Plaintiff seeks a declaratory order to compel officers and employees of the United States and its agencies to perform duties owed to Plaintiffs and required under law.

4. Sovereign immunity for non-monetary relief is waived under 5 U.S.C. § 702, which entitles Plaintiff to relief when Defendant acted unconstitutionally and beyond statutory authority.

5. Venue is appropriate in this judicial district under 28 U.S.C. § 1391(b) and (e).

## ADMINISTRATIVE EXHAUSTION

6.      Defendant has informed Plaintiff that she does not have appeal rights via the MSPB or under the Civil Service Reform Act unless her claim is that her termination was the result of her marriage or that her termination was partisan.

7.      Plaintiff is not obligated to administratively exhaust Constitutional Claims.

8.      According to the provisions of Plaintiff's termination notice, none of the administrative avenues available to Plaintiff apply to the allegations contained here.

## RELEVANT FACTS

9.      Plaintiff began her employment with the federal government in 2006, when she was hired as a Supervisory Dietician with the VA.  At the time, Plaintiff was a state licensed dietician with an undergraduate degree from Brown University, and an advanced credential in dietetics and Nutrition from Florida International University.

10.     Plaintiff worked as a dietician with the VA from 2006 to 2021.  In 2017, Plaintiff began taking evening classes at City University of New York Law School, and graduated with a law degree in the Spring of 2020.  She passed the in bar in New York in October of 2020 and was admitted to the bar of New York March of 2021.

11.     Once she was admitted to practice law in New York, Plaintiff applied to the VA OGC , but was advised that she would have a better chance of being hired if she had some experience in the Human Resources, Employment and Labor Relations function.

12.     Thus, in September of 2021, Plaintiff joined the VA's Human Resources Department (hereinafter "HR"), and in May of 2022, she was promoted to an HR supervisor.

13.     In June 2023, Plaintiff accepted a lateral transfer to an executive HR specialist role, which involved working directly with network level employees.

14. 90% of Plaintiff's time in HR (and those of others in her position) was spent working on either (i) disciplinary actions, or (ii) defending the agency in grievances, arbitrations, Unfair Labor Practice charges and Federal Labor Relations Act claims.

15. In some instances Plaintiff reviewed and revised the work of subordinate employees, and at other times she did the work directly, depending on the complexity of the situation.

16. The remaining 10% of Plaintiff's time when she was worked in HR was devoted to performance actions (satisfactory and unsatisfactory performance reviews) and providing training in Fact Finding investigations and other employee relations and labor relations matters.

17. Furthermore, while Plaintiff was working in HR/Labor Relations, she was a licensed attorney and served as first and/or second chair representing the VA in Arbitrations. In that role, Plaintiff routinely gathered and reviewed, evidence and strategized with OGC on discovery responses in support of litigation.

18. Plaintiff was also responsible for labor relations programs, including management of requests for information, grievance processing, responding to, investigating and litigating unfair labor practices, and drafting notice of opportunities memoranda. Plaintiff also wrote and prepared VA personal actions (removals, suspensions, disciplinary actions).

19. For the duration of her tenure with the VA until she went to OGC, Plaintiff's performance and evaluations were consistently outstanding.

20. In November of 2023, Plaintiff was offered a position in OGC, which was unfortunately rescinded due to a hiring freeze.

21. In May of 2024, Plaintiff was re-offered the position, and Plaintiff took the position as an Attorney Advisor in the OGC.

22. The Attorney series in the OGC starts at a GS 11 for entry level hires and those will very little legal experience.

23. When OGC HR reviewed Plaintiff's resume, they qualified her as a GS 14 (top of the paygrade) attorney because of her extensive relevant experience in HR.

24. At the time Plaintiff was hired into OGC, OGC recognized that her three years of HR experience was equivalent to three years of Attorney experience (GS 11, GS 12, & GS 13) and thus necessarily considered Plaintiff's work in HR as the "same or similar" to her legal duties in OGC. Had this not been the case, Plaintiff would have been hired at a lower level.

25. The offer letter sent to Plaintiff indicated that the position was a reassignment, and that her position was as a "permanent" employee, although it included a one year probationary period. *See* EXHIBIT 1.

26. From May of 2024 until February 13, 2025, Plaintiff received nothing but positive feedback and compliments about her work in OGC from her supervisor, Michael Berger (hereinafter "Mr. Berger"). *See* EXHIBIT 2.

27. Moreover, Plaintiff repeatedly received very high praise for her second line manager Daniel Rattray (hereinafter "Mr. Rattray"). *See* EXHIBIT 3.

28. On or about November 25, 2024, Plaintiff received her annual evaluation for fiscal year 2024, in which she received ratings of outstanding in four out of five categories, and Plaintiff received an award for her strong performance. *See* EXHIBIT 4.

29. Importantly, Plaintiff's performance appraisal corroborates the fact that her years of experience in HR were integral to her performance and justified her being given the highest attorney GS rating, in that it states: "Ms. Schechter is a GS-14 attorney at the top of her journeyman

for the job series.... Ms. Schechter is fully successful for that of a GS-14 (which is usually a grade held by more experienced attorneys.) *See id.*

30. On or about February 13, 2025, Plaintiff received an email stating in pertinent part that she was being terminated. The reason given was: "The Agency finds, based on your performance, that you have not demonstrated that your further employment at the Agency would be in the public interest." *See* EXHIBIT 5.

31. However, the termination letter specifically references 5 C.F.R. §315.803 & 804 as the basis for Plaintiff's termination, which only permit termination for "unsatisfactory performance or conduct."

32. There is no regulation that requires any regular or probationary employee to prove that his or her employment is in the public's interest to remain employed.

33. *Inter alia*, the letter indicated that because Plaintiff was a "probationary" employee, her appeal rights to the MSPB are limited to: a) if she believed her termination was for her marital status; b) was partisan in nature, or c) if she believed her termination did not comply with 5 C.F.R §325.805, which deals with terminations due to conditions arising before appointment. *See* EXHIBIT 5 & 6.

34. Plaintiff's claims herein do not fit into any of those three categories. Rather, Plaintiff asserts that she was entitled to credit for her years in HR, and should not have been a probationary employee to begin with, because she meets all of the criteria set out in 5 C.F.R. § 315.802 to have been given credit for her service in HR.

35. Plaintiff thus alleges that the agency's refusal to give her such credit was arbitrary and capricious.

36. Plaintiff further asserts that the allegation in her termination letter that her performance was poor is patently false and defamatory in nature. *See* EXHIBIT 5.

37. Even if the assertion that Plaintiff's performance was unsatisfactory was based in fact (which it was not), Plaintiff was denied any due process rights regarding her termination, including a) being informed as to what her specific performance deficiencies were; and b) being given an opportunity to respond to any perceived deficiencies. *See* 5 C.F.R. §315.804.

38. Plaintiff spoke with Mr. Berger on Microsoft Teams platform after she was terminated, and he specifically informed her that her termination was not based on poor performance, and that would serve as reference for her in any job search.

39. Mr. Berger also admitted that he had no knowledge that Plaintiff was going to be fired, was not consulted about the quality of Plaintiff's work, and had no say in the termination decision.

40. Mr. Rattray and Michael Hogan, who is Mr. Rattray's superior, have asked for Plaintiff's termination to be rescinded.

41. Plaintiff asserts that the statements from Mr. Berger and others constitute admissions that the reason given for Plaintiff's termination was false, and was pretext for an unlawful purpose or motive in the adverse employment action against Plaintiff.

42. Plaintiff is now seeking new employment, and has not received interest from any employer she has contacted. On information and belief, the fact that Plaintiff was recently terminated is negatively impacting her ability to find new employment.

## CLAIMS

### COUNT I

*(Violation of the Fifth Amendment to the Constitution –*
*Substantive Due Process)*

43. Plaintiff references and incorporates all of the allegations in the previous paragraphs as if fully restated herein.

44. The Fifth Amendment to the Constitution protects against harms to a person's reputation caused by government actors, often referred to as "reputation plus" and "stigma plus" harms.

45. Plaintiff has a clearly defined interest in the maintenance of her reputation as a professional, acquired over years of faithful service to the United States.

46. Here, Plaintiff was terminated under the auspices of her performance being poor.

47. Plaintiff asserts that this characterization of her performance is patently and demonstrably false.

48. Plaintiff has suffered a material adverse action of a job loss, and direct damage to her reputation by Defendant's material misrepresentation of Plaintiff's professional skills.

49. Plaintiff asserts that the reason given for her termination is pretext to hide an unlawful motive.

50. As a direct result and proximate cause of Defendant's violation of Plaintiff's Constitutional substantive due process rights, Plaintiff has suffered harm, and seeks a remedy from this Court that reinstates her to her previous employment and otherwise makes her whole.

### COUNT II

*Violation of the Fifth Amendment to the Constitution –*
*Procedural Due Process)*

51. Plaintiff references and incorporates all of the allegations in the previous paragraphs as if fully restated herein.

52. In May of 2024, Defendant offered Plaintiff a permanent (non-probationary) position in the OGC as an attorney.

53. On or about February 13, 2025, Defendant stripped Plaintiff of her procedural due process rights, by asserting that she could be terminated without the appeal rights afforded to other permanent employees.

54. On or about February 13, 2025, Defendant violated Plaintiff's due process rights by terminating her without prior notice of performance deficiency, and without a right to respond to any claim that her performance was unsatisfactory.

55. Even if Plaintiff was a probationary employee, on or about February 13, 2025, Defendant violated Plaintiff's due process rights by violating the provisions of 5 C.F.R. § 315.803 and 5 C.F.R. §752.401.

56. As a direct result and proximate cause of Defendant's violation of Plaintiff's Constitutional substantive due process rights, Plaintiff has suffered harm, and seeks a remedy from this Court that reinstates her to her previous employment and otherwise makes her whole.

## COUNT III

*(Violation of the Administrative Procedures Act 5 U.S.C. § 706(2))*

57. Plaintiff references and incorporates all of the allegations in the previous paragraphs as if fully restated herein.

58. Under the Administrative Procedures Act (hereinafter "APA"), a court shall "hold unlawful and set aside agency action found to be . . . arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law . . . contrary to constitutional right, power, privilege, or immunity . . . without observance of procedure required by law . . . [or] . . . unwarranted by the facts to the extent that the facts are subject to trial de novo by the reviewing court." 5 U.S.C. §

706(2)(B).

59. Plaintiff asserts that Defendant's insistence that Plaintiff serve a probationary period was in violation of 5 C.F.R. §315.802, and was arbitrary and capricious.

60. Plaintiff asserts that Defendant's characterization of her performance as "poor," and thus worthy of the severe sanction of termination was without basis in fact, and as such, qualifies as arbitrary and capricious.

61. Defendant's failure to provide Plaintiff with any notice, let alone written notice, of any deficiencies in her performance, or any opportunity to respond to concerns about her performance, constituted arbitrary and capricious conduct, and directly violated applicable regulations.

62. Defendant's actions vis-à-vis Plaintiff are sufficiently severe and outrageous to warrant this Court's intervention

63. As a direct result and proximate cause of Defendant's violation of the APA, Plaintiff has suffered harm, and seeks a remedy from this Court that reinstates her to her previous employment and otherwise makes her whole.

## COUNT IV

*(Plea for Writ of Mandamus under 28 U.S.C. §1361*
*--Plead in the alternative)*

64. Plaintiff references and incorporates all of the allegations in the previous paragraphs as if fully restated herein.

65. The provisions of 28 U.S.C. § 1361 provide a statutory basis for jurisdiction in cases seeking relief in the nature of mandamus against federal officers, employees, and agencies, and they provide for an independent cause of action in the absence of any other available remedies.

66. Defendant's actions, as set forth above, constitute plainly unlawful and unjustified actions.

11

67. Defendant did not have the right to reclassify Plaintiff to a probationary employee when she was offered a position as a permanent employee when she transferred from another position.

68. Defendant did not have the right to deprive Plaintiff of any and all substantive and procedural due process in terminating her employment.

69. If no other remedy is available to Plaintiff, she asks for the issuance of a Writ of Mandamus ordering Defendant to reinstate her to her previous position and otherwise make her whole.

## JURY TRIAL DEMAND

70. Plaintiff demands trial by jury for all claims so triable.

Respectfully submitted,

/s/Pamela M. Keith
Pamela M. Keith [Bar. No. 448421]
CENTER FOR EMPLOYMENT JUSTICE
650 Massachusetts Ave. NW
Suite 600
Washington, DC 20001
Tel: (202) 800-0292
Fax: (202) 807-5725
pamkeith@centerforemploymentjustice.com
*Counsel for Plaintiff*