# EXHIBIT 1

  **Gmail**

**Gail Schechter <gail.schechter@gmail.com>**

---

## FW: [EXTERNAL] Congratulations, Gail Schechter! We're excited to officially offer you the General Atty (Veterans) position in North Atlantic District T1!

---

**Schechter, Gail (OGC)** <Gail.Schechter@va.gov>
To: Gail Schechter <gail.schechter@gmail.com>

Thu, Feb 13, 2025 at 7:33 PM

---

**From:** Rattray, Daniel C. (OGC) (he/him/his) <Daniel.Rattray@va.gov>
**Sent:** Wednesday, April 17, 2024 12:37 PM
**To:** Martinez, Gilda Maria B. (WMC) <Gilda.Martinez@va.gov>; Schechter, Gail (V05) (she/her/hers) <Gail.Schechter@va.gov>
**Cc:** Kidwell, Eric <James.Kidwell@va.gov>; Megibow, Colleen (WMC) <Colleen.Megibow@va.gov>; Lewis, Oscar Q. (WMC) <Oscar.Lewis@va.gov>; Merkl, Kathleen (OGC) <Kathleen.Merkl@va.gov>; Berger, Michael J. OGC <Michael.Berger3@va.gov>; Brown, Tamiko D. (OGC) <Tamiko.Brown@va.gov>
**Subject:** RE: [EXTERNAL] Congratulations, Gail Schechter! We're excited to officially offer you the General Atty (Veterans) position in North Atlantic District T1!

Hurray, Gail, Dan

---

**From:** usastaffingoffice@opm.gov <usastaffingoffice@opm.gov>
**Sent:** Wednesday, April 17, 2024 12:36 PM
**To:** Schechter, Gail (V05) (she/her/hers) <Gail.Schechter@va.gov>
**Cc:** Martinez, Gilda Maria B. (WMC) <Gilda.Martinez@va.gov>; Kidwell, Eric <James.Kidwell@va.gov>; Megibow, Colleen (WMC) <Colleen.Megibow@va.gov>; Lewis, Oscar Q. (WMC) <Oscar.Lewis@va.gov>; Merkl, Kathleen (OGC) <Kathleen.Merkl@va.gov>; Berger, Michael J. OGC <Michael.Berger3@va.gov>; Rattray, Daniel C. (OGC) (he/him/his) <Daniel.Rattray@va.gov>; Brown, Tamiko D. (OGC) <Tamiko.Brown@va.gov>
**Subject:** [EXTERNAL] Congratulations, Gail Schechter! We're excited to officially offer you the General Atty (Veterans) position in North Atlantic District T1!

## General Counsel

Dear Gail Schechter,

It is my pleasure to confirm the offer to your new position as a **General Atty (Veterans)** within North Atlantic District T1 of the Department of Veterans Affairs (DVA), Station 109, located in Brooklyn, New York!

This letter contains the details of your role, as well as the information you will need to know to begin your first days of work.

Your start date has been set for **05/06/2024.**

Within the next 72 hours, please confirm this date by clicking the link below.

***Non-response by the deadline (within 72 hours) is considered a declination of the firm offer of employment for this position***.

- **Confirmation Link:** https://onboard.usastaffing.gov//?newhire=HQ6ZJ-Y8V3&type=official

You will be required to report directly to your Supervisor (or designee) Kathleen Merkl at the duty location of your position on 05/06/2024 . They will provide you with any other pertinent reporting instructions. Should you have any questions, they can be reached at Kathleen.Merkl@va.gov or 718-630-2908.

The following information reflects the pertinent details regarding your new position:

- **Effective Date:** 05/05/2024
- **Position Title:** General Atty (Veterans)
- **Pay Plan - Series - Grade/Step:** GS-0905-14/6
- **Action Type:** Reassignment
- **Salary:** $122,039 Per Year
- **Appointment Type:** Permanent
- **Work Schedule:** Full-Time, Monday - Friday, 8:00 am - 4:30pm
- **Telework:** Position is eligible for Telework.
- **Work (Duty) Location:** 800 Poly Place, Brooklyn, New York 11209
- **Remote/Virtual:** This position is not eligible for Remote/Virtual work and is located at the location listed above.
- **Compressed Work Schedule:** Authorized
- **Employment System:** Title 5
- **Probationary Period:** Based on your current status, you will be required to serve a one year probationary period. For probationary period requirements please see 5 CFR 315.801 Subpart H - Probation on Initial Appointment to a Competitive Position.
- **Bargaining Unit Position:** No .
- **Financial Disclosure Report:** Not Required
- **Benefits:** There will not be any changes to your current benefits unless you have a qualifying life event. Please contact: VHAHROOHRMACSEPMSBenefitsTeam@va.gov if you have any benefits related questions.

By accepting this offer and confirming your start date you are agreeing to the following terms:

- This is a final offer of employment. By accepting this final offer, you are acknowledging and accepting your responsibility to follow COVID-19 and infection control safety precautions as required by local protocols, or VA policy in accordance with the Centers for Disease Control and Prevention and Safer Federal Workforce Task Force when necessary. Your supervisor will discuss these requirements with you as applicable.
- This position is required to participate in the Seasonal Influenza Vaccination Program and is a requirement for all Department of Veterans Affairs Health Care Personnel (HCP). It is a requirement that all HCP receive the annual Seasonal Influenza Vaccination or obtain an exemption for medical or religious reasons. Wearing a face mask is required when an exemption has been granted. HCP in violation of this directives may face disciplinary action up to and including removal from Federal service.

If you have any questions about these details, please don't hesitate to contact me.

Once again, welcome to your new position!

Sincerely,

Gilda Martinez, Human Resources Specialist
Human Resources Management and Consulting Service | Human Resources Operations Office, (HROO)
Workforce Management and Consulting | Veterans Health Administration
gilda.martinez@va.gov
478-272-1210 X72027

---

**ATTACHMENTS:**

- Government Ethics Notice

**New Hire Help:** https://help.usastaffing.gov/NewHire/index.php?title=Welcome_New_Hire
**EAP Help:** www.foh4you.com

**PLEASE BE ADVISED:** No changes/deletion of email accounts and authentication methods (including phone numbers, if

applicable) from the login.gov account can be made after you have successfully accepted the Tentative Job Offer. You must use the same credentials (email and authentication method) to accept this Official Job Offer as you used to accept the Tentative Job Offer. Please use a computer/tablet to accept the position and to complete onboarding tasks. Using a cellular phone can interrupt the connection between login.gov and the onboarding record causing onboarding delays.

---

**HR Use Only:**

Request Number: 90053638-44968-2024-04-11
Announcement Number:
Supervisor: Kathleen Merkl, Kathleen.Merkl@va.gov
Projected Start Date: 05/06/2024
Type of Appointment: Permanent
Employment Status: Full-Time
Transfer: No
Remote/Virtual: No

# EXHIBIT 2

 Gmail

**Gail Schechter <gail.schechter@gmail.com>**

## time off award

**Gail Schechter** <gail.schechter@gmail.com>                     Sun, Feb 23, 2025 at 2:43 PM
To: Gail Schechter <gail.schechter@gmail.com>

Sent from my iPhone

 **IMG_7038.jpg**
1709K

 Gmail          🔍 berger                                ✕  ⫶≡      ⑦  ⚙  ✦  ▦  

                                    ✉                                              16 of 27

Schechter, Gail (OGC)                          Thu, Feb 13, 1:31 PM (10 days ago)
to me

**From:** Berger, Michael J. OGC <Michael.Berger3@va.gov>
**Sent:** Monday, January 27, 2025 3:21 PM
**To:** Rattray, Daniel C. (OGC) (he/him/his) <Daniel.Rattray@va.gov>; Schechter, Gail (OGC) <Gail.Schechter@va.gov>
**Cc:** OGC North Atlantic District Supervisors <OGCNorthAtlanticDistrictSupervisors@va.gov>
**Subject:** RE: Time to Celebrate Gail!

Way to go, Gail!  It is nice to see appreciation for you from Rita Rivera.  Your attention to detail caught a flaw in an advanced directive; which gives the Veteran an opportunity to have it revised.  Ultimately, your review protected the interests of the Veteran.
Keep it up!
Best, Michael

**From:** Rattray, Daniel C. (OGC) (he/him/his) <Daniel.Rattray@va.gov>

 Gmail

Gail Schechter <gail.schechter@gmail.com>

## FW: Local 17 Grievance call with OPM

**Schechter, Gail (OGC)** <Gail.Schechter@va.gov>
To: Gail Schechter <gail.schechter@gmail.com>

Thu, Feb 13, 2025 at 7:29 PM

**From:** Berger, Michael J. OGC <Michael.Berger3@va.gov>
**Sent:** Wednesday, February 5, 2025 5:10 PM
**To:** Burke, Barbara (OGC) <Barbara.Burke@va.gov>; Rattray, Daniel C. (OGC) <Daniel.Rattray@va.gov>
**Cc:** Schechter, Gail (OGC) <Gail.Schechter@va.gov>; Smart, Monique E. (OGC) <Monique.Smart@va.gov>
**Subject:** RE: Local 17 Grievance call with OPM

That is awesome, Barbara.  Thank you so much for your continued representation on this case, and, thank you Monique and Gail for your co-support!   I am beyond inspired and proud of the effort, intellect and legal prowess of this team! Please let me know if there is anything I can do to support you.

Michael

**From:** Burke, Barbara (OGC) <Barbara.Burke@va.gov>
**Sent:** Wednesday, February 5, 2025 4:42 PM
**To:** Berger, Michael J. OGC <Michael.Berger3@va.gov>; Rattray, Daniel C. (OGC) <Daniel.Rattray@va.gov>
**Cc:** Schechter, Gail (OGC) <Gail.Schechter@va.gov>; Smart, Monique E. (OGC) <Monique.Smart@va.gov>
**Subject:** Local 17 Grievance call with OPM

Hi All,

I spoke with Noah Peters and Tim Curry for a little over a half hour today. I discussed OGC's legal strategy and presented options that we as a group had discussed. In sum, they agree that I should try to get the arbitrator to dismiss it as moot with the understanding that there is no formal motion practice mechanism. They feel it is a long shot but worth a try. They have also told me that they want the new Secretary Collins on the witness list to testify for the Agency. They emphasized the importance of this in their view. They told me to reach out to Danielle Runyon for direction on how to get his scheduler. They further said that I should request from the arbitrator a schedule modification because they do not believe the new Secretary will be available on February 28th. They said I should proceed with these two options.

They thanked our office for all of the work we are doing on this matter.

Barbara

Barbara Burke

Attorney

2/23/25, 1:37 PM                                         Gmail - FW: Local 17 Grievance call with OPM

Office of General Counsel

North Atlantic District

U.S. Department of Veterans Affairs

(202) 820-3613

(347) 456-9241

2/23/25, 2:40 PM            Gmail - 2/6 Compliment

 **Gmail**

**Gail Schechter <gail.schechter@gmail.com>**

## 2/6 Compliment
1 message

**Gail Schechter** <gail.schechter@gmail.com>          Sun, Feb 23, 2025 at 2:38 PM
To: Gail Schechter <gail.schechter@gmail.com>

Sent from my iPhone





**View recent photos.jpeg**
313K

 Gmail

**Gail Schechter** <gail.schechter@gmail.com>

## Customer Compliment

**Gail Schechter** <gail.schechter@gmail.com>
To: Gail Schechter <gail.schechter@gmail.com>

Sun, Feb 23, 2025 at 2:36 PM

2/23/25, 2:48 PM                                                    Gmail - good work on a par

 Gmail                                          Gail Schechter <gail.schechter@gmail.com>

## good work on a par

**Gail Schechter** <gail.schechter@gmail.com>                      Sun, Feb 23, 2025 at 2:48 PM
To: Gail Schechter <gail.schechter@gmail.com>

Sent from my iPhone

**2 attachments**


**IMG_7089.jpg**
731K


**IMG_7090.jpg**
1128K

2/23/25, 2:41 PM                                    Gmail - text compliment

 **Gmail**                                    Gail Schechter <gail.schechter@gmail.com>

**text compliment**

**Gail Schechter** <gail.schechter@gmail.com>                    Sun, Feb 23, 2025 at 2:41 PM
To: Gail Schechter <gail.schechter@gmail.com>

Sent from my iPhone

**2 attachments**

 **IMG_7110.PNG**
1112K

 **IMG_7111.PNG**
706K

# EXHIBIT 3

How Was Our Service Today?                                                    SurveyMonkey

# #1,050

**COMPLETE**

| | |
|---|---|
| **Collector:** | Web Link 1 (Web Link) |
| **Started:** | Friday, June 14, 2024 8:36:33 AM |
| **Last Modified:** | Friday, June 14, 2024 8:36:37 AM |
| **Time Spent:** | 00:00:04 |
| **IP Address:** | 152.133.6.135 |

Page 1

**Q1**

Please identify your facility:

New York Harbor Healthcare System

**Q2**

Your name (optional):

Jeanette Alvarez

**Q3**

Who provided service to you?

Gail Schechter (Attorney Advisor)

**Q4**

What service did we provide?

Review non-VA AD

**Q5**

Rate the quality of our service:

☆                                                           **Outstanding**

**Q6**

Rate the timeliness of our service:

☆                                                           **Outstanding**

## Q7

Rate our courtesy and professionalism:

☆                                              **Outstanding**

## Q8

What was particularly notable to you?

Her prompt response.

 va.gov/ogc/

 336.631.5014

*We want your feedback about your customer experience.*

**<u>VA Protects Whistleblowers:  All VA employees have the right to make protected disclosures to Congress, OAWP, OIG, OSC, and other entities and offices, without fear of retaliation. You are not limited to your supervisory chain when making a protected disclosure.</u>**

Response_1070_240802 Gail.pdf
62K

2/17/25, 8:59 PM                                                                 Gmail - FW: Time to Celebrate Gail!

 Gmail                                                      Gail Schechter <gail.schechter@gmail.com>

**FW: Time to Celebrate Gail!**

**Schechter, Gail (OGC)** <Gail.Schechter@va.gov>                               Thu, Feb 13, 2025 at 7:33 PM
To: Gail Schechter <gail.schechter@gmail.com>

**From:** Rattray, Daniel C. (OGC) (he/him/his) <Daniel.Rattray@va.gov>
**Sent:** Friday, August 2, 2024 3:54 PM
**To:** Schechter, Gail (OGC) (she/her/hers) <Gail.Schechter@va.gov>
**Cc:** OGC North Atlantic District Supervisors <OGCNorthAtlanticDistrictSupervisors@va.gov>
**Subject:** Time to Celebrate Gail!



Daniel C. Rattray (he/him/his)

Chief Counsel, North Atlantic District

*I*DEA Influencer*



Office of General Counsel

U.S. Department of Veterans Affairs

How Was Our Service Today?                                                SurveyMonkey

**Q7**

Rate our courtesy and professionalism:

☆                                                **Outstanding**

**Q8**

What was particularly notable to you?

Service was expedient.

**Q9**                                            **No**

Would you like us to contact you?

Page 2

**Q10**                                          **Respondent skipped this question**

Your Contact Information:

How Was Our Service Today?                                              SurveyMonkey

# #1,070

**COMPLETE**

| | |
|---|---|
| **Collector:** | Web Link 1 (Web Link) |
| **Started:** | Friday, July 26, 2024 8:50:06 AM |
| **Last Modified:** | Friday, July 26, 2024 9:46:44 AM |
| **Time Spent:** | 00:56:37 |
| **IP Address:** | 152.133.6.131 |

Page 1

**Q1**

Please identify your facility:

VA New Jersey Healthcare System

**Q2**

Your name (optional):

Towanda Smith

**Q3**

Who provided service to you?

Gail Schecter

**Q4**

What service did we provide?

Subpoena Acknowledgement

**Q5**

Rate the quality of our service:

☆                                                    **Outstanding**

**Q6**

Rate the timeliness of our service:

☆                                                    **Outstanding**

 va.gov/ogc/

 336.631.5014

*We want your feedback about your customer experience.*

***VA Protects Whistleblowers:  All VA employees have the right to make protected disclosures to Congress, OAWP, OIG, OSC, and other entities and offices, without fear of retaliation. You are not limited to your supervisory chain when making a protected disclosure.***

Response_1105_240923 Gail.pdf
62K

2/17/25, 9:04 PM                              Gmail - FW: Time to Celebrate Gail!

 Gmail

**Gail Schechter <gail.schechter@gmail.com>**

**FW: Time to Celebrate Gail!**

**Schechter, Gail (OGC)** <Gail.Schechter@va.gov>                    Thu, Feb 13, 2025 at 7:32 PM
To: Gail Schechter <gail.schechter@gmail.com>

**From:** Rattray, Daniel C. (OGC) (he/him/his) <Daniel.Rattray@va.gov>
**Sent:** Monday, September 23, 2024 10:23 AM
**To:** Schechter, Gail (OGC) (she/her/hers) <Gail.Schechter@va.gov>
**Cc:** OGC North Atlantic District Supervisors <OGCNorthAtlanticDistrictSupervisors@va.gov>
**Subject:** Time to Celebrate Gail!



Daniel C. Rattray (he/him/his)

Chief Counsel, North Atlantic District

*I*DEA Influencer*



Office of General Counsel

U.S. Department of Veterans Affairs

**Q7**

Rate our courtesy and professionalism:

☆                                                    **Outstanding**

**Q8**

What was particularly notable to you?

Gail always provides excellent service.

**Q9**                                                **No**

Would you like us to contact you?

Page 2

**Q10**                                              **Respondent skipped this question**

Your Contact Information:

How Was Our Service Today?                                                    SurveyMonkey

# #1,105

**COMPLETE**

| | |
|---|---|
| **Collector:** | Web Link 1 (Web Link) |
| **Started:** | Monday, September 16, 2024 1:16:49 PM |
| **Last Modified:** | Monday, September 16, 2024 1:18:32 PM |
| **Time Spent:** | 00:01:42 |
| **IP Address:** | 152.131.15.115 |

Page 1

**Q1**

Please identify your facility:

VISN2 VHA

**Q2**                                          Respondent skipped this question

Your name (optional):

**Q3**

Who provided service to you?

Gail Schechter

**Q4**

What service did we provide?

Letter review

**Q5**

Rate the quality of our service:

☆                                              **Outstanding**

**Q6**

Rate the timeliness of our service:

☆                                              **Outstanding**

2/17/25, 9:06 PM                                    Gmail - FW: Time to Celebrate Gail!

 va.gov/ogc/

 336.631.5014

*We want your feedback about your customer experience.*



***VA Protects Whistleblowers:  All VA employees have the right to make protected disclosures to Congress, OAWP, OIG, OSC, and other entities and offices, without fear of retaliation. You are not limited to your supervisory chain when making a protected disclosure.***

---

📄 **Response_1082_240816 Gail.pdf**
   61K

 Gmail

**Gail Schechter <gail.schechter@gmail.com>**

---

**FW: Time to Celebrate Gail!**

---

**Schechter, Gail (OGC) <Gail.Schechter@va.gov>**
To: Gail Schechter <gail.schechter@gmail.com>

Thu, Feb 13, 2025 at 7:32 PM

**From:** Rattray, Daniel C. (OGC) (he/him/his) <Daniel.Rattray@va.gov>
**Sent:** Friday, August 16, 2024 11:02 AM
**To:** Schechter, Gail (OGC) (she/her/hers) <Gail.Schechter@va.gov>
**Cc:** OGC North Atlantic District Supervisors <OGCNorthAtlanticDistrictSupervisors@va.gov>
**Subject:** Time to Celebrate Gail!



Daniel C. Rattray (he/him/his)

Chief Counsel, North Atlantic District

*I\*DEA Influencer*



Office of General Counsel

U.S. Department of Veterans Affairs

How Was Our Service Today?                                    SurveyMonkey

**Q7**

Rate our courtesy and professionalism:

☆                                    **Outstanding**

**Q8**

What was particularly notable to you?

Gail made herself available to have multiple communications on this case.  She was knowledgeable and easy to work with.

**Q9**                                    **No**

Would you like us to contact you?

Page 2

**Q10**                                    Respondent skipped this question

Your Contact Information:

How Was Our Service Today?                                            SurveyMonkey

# #1,082

**COMPLETE**

| | |
|---|---|
| **Collector:** | Web Link 1 (Web Link) |
| **Started:** | Thursday, August 15, 2024 10:35:11 AM |
| **Last Modified:** | Thursday, August 15, 2024 10:40:07 AM |
| **Time Spent:** | 00:04:56 |
| **IP Address:** | 152.131.15.100 |

Page 1

**Q1**

Please identify your facility:

VA Healthcare System VISN 2

**Q2**                                          *Respondent skipped this question*

Your name (optional):

**Q3**

Who provided service to you?

Gail Schechter

**Q4**

What service did we provide?

Adverse Action Review

**Q5**

Rate the quality of our service:

☆                                          **Outstanding**

**Q6**

Rate the timeliness of our service:

☆                                          **Outstanding**



Daniel C. Rattray (he/him/his)

Chief Counsel, North Atlantic District

*I\*DEA Influencer*



Office of General Counsel

U.S. Department of Veterans Affairs

🌐 va.gov/ogc/

📞 336.631.5014

*We want your feedback about your customer experience.*

**VA Protects Whistleblowers:  All VA employees have the right to make protected disclosures to Congress, OAWP, OIG, OSC, and other entities and offices, without fear of retaliation. You are not limited to your supervisory chain when making a protected disclosure.**

 **Gmail**

**Gail Schechter <gail.schechter@gmail.com>**

## FW: It's Time to Celebrate Gail's, Stephanie's, and Toni's Exceptional Customer Service

**Schechter, Gail (OGC)** <Gail.Schechter@va.gov>
To: Gail Schechter <gail.schechter@gmail.com>

Thu, Feb 13, 2025 at 7:32 PM

**From:** Rattray, Daniel C. (OGC) (he/him/his) <Daniel.Rattray@va.gov>
**Sent:** Friday, September 27, 2024 1:16 PM
**To:** Schultz, Antoinette (OGC) <Antoinette.Schultz2@va.gov>; Schechter, Gail (OGC) (she/her/hers) <Gail.Schechter@va.gov>; Comas-Papanikos, Stephanie S. (OGC) <Stephanie.ComasPapanikos@va.gov>
**Cc:** OGC North Atlantic District Supervisors <OGCNorthAtlanticDistrictSupervisors@va.gov>
**Subject:** RE: It's Time to Celebrate Gail's, Stephanie's, and Toni's Exceptional Customer Service

As you have said frequently, Toni, teamwork makes the dream work, thank you, I love to see our clients recognize exceptional service and see our collaboration that went into it, Dan

**From:** Schultz, Antoinette (OGC) <Antoinette.Schultz2@va.gov>
**Sent:** Friday, September 27, 2024 1:12 PM
**To:** Rattray, Daniel C. (OGC) (he/him/his) <Daniel.Rattray@va.gov>; Schechter, Gail (OGC) (she/her/hers) <Gail.Schechter@va.gov>; Comas-Papanikos, Stephanie S. (OGC) <Stephanie.ComasPapanikos@va.gov>
**Cc:** OGC North Atlantic District Supervisors <OGCNorthAtlanticDistrictSupervisors@va.gov>
**Subject:** RE: It's Time to Celebrate Gail's, Stephanie's, and Toni's Exceptional Customer Service

Oh wow!  Thanks Dan!

**From:** Rattray, Daniel C. (OGC) (he/him/his) <Daniel.Rattray@va.gov>
**Sent:** Friday, September 27, 2024 1:07 PM
**To:** Schechter, Gail (OGC) (she/her/hers) <Gail.Schechter@va.gov>; Comas-Papanikos, Stephanie S. (OGC) <Stephanie.ComasPapanikos@va.gov>; Schultz, Antoinette (OGC) <Antoinette.Schultz2@va.gov>
**Cc:** OGC North Atlantic District Supervisors <OGCNorthAtlanticDistrictSupervisors@va.gov>
**Subject:** It's Time to Celebrate Gail's, Stephanie's, and Toni's Exceptional Customer Service

How Was Our Service Today?                                                                    SurveyMonkey

**Q7**

Rate our courtesy and professionalism:

☆                                                          **Outstanding**

**Q8**

What was particularly notable to you?

Quick reply, thorough responses and helpful feedback!

**Q9**                                                      **No**

Would you like us to contact you?

Page 2

**Q10**                                                     **Respondent skipped this question**

Your Contact Information:

How Was Our Service Today?                                              SurveyMonkey

# #1,110

COMPLETE

**Collector:**         Web Link 1 (Web Link)
**Started:**           Wednesday, September 25, 2024 3:55:42 PM
**Last Modified:**     Wednesday, September 25, 2024 3:58:15 PM
**Time Spent:**        00:02:32
**IP Address:**        152.133.6.135

Page 1

### Q1

Please identify your facility:

Manhattan VA Medical Center

### Q2

Your name (optional):

Sarah Polsinelli

### Q3

Who provided service to you?

Gail Schechter, Stephanie Comas-Papanikos, Antoinette Schultz

### Q4

What service did we provide?

Non-VA Health Care Proxy Review

### Q5

Rate the quality of our service:

☆                                            **Outstanding**

### Q6

Rate the timeliness of our service:

☆                                            **Outstanding**

2/17/25, 9:11 PM                    Gmail - FW: Let's Celebrate Jonathan, Gail, Christine, Renae, and Creston!

I just wanted to take a moment to recognize my wonderful colleagues! On Wednesday and Thursday last week, Christine, Gail, and I held a 1.5 day AIB training for around 120 DNA clients. Christine and Gail were a pleasure to collaborate with, making an otherwise challenging process both easy and fun. Despite having such a massive group, in a virtual format (not exactly conducive to participation), they helped keep everyone engaged by being approachable, knowledgeable, and interesting. I can't thank them both enough for making this training so tremendously valuable for the attendees. Thank you Gail and Christine!

I would be remiss, however, if I didn't also recognize our two witnesses, who volunteered their time to take on acting roles where our clients were able to conduct mock interviews. For those who don't know, we have two excellent actors among us! Renae led us off and she was fantastic, playing the role of Nurse Nelly better than I could have imagined! Creston was up next, and while his acting prowess is well known to me, he nailed his performance as Dr. Evil, and offered up my favorite line (completely ad-libbed): "I generally do not request permission to save someone's life." Neither of them had to even show up, never mind put in the level of effort they did, which made the practice experience for our clients that much more valuable and fun. I'm so impressed by you two!

You don't have to take my word for this, though. We surveyed our participants and here are just some of the responses we received:

1. GREAT instructors who were extremely well versed on the material!  Very intercative and well put together.
2. AWESOME!
3. Thank you for being so personable, and approachable with questions.
4. Excellent training; well organized
5. The presentations were very helpful, especially since the presenters were flexible in answering questions right away.  The mock interviews were my favorite part- they really pulled all we had learned together.
6. I liked the easy-to-understand presenters and the way the class was organized
7. loved the role play!
8. Presenters were very knowledgeable, spoke well, were patient, kept everyone on track, worked well together, and you could tell they enjoy what they do.  Breaking out into group activity was great as well.
9. The entire Team was enthusiastic and pleasant.  They taught in a way that could have made "dry" information fun to learn.
10. Loved the mock interviewing
11. Great job presenting the content, as an instructor it is often difficult to conduct training via MS Teams. Thank you...
12. Thank you for presenting this material. It was helpful and the presenters were all engaging and informative!
13. Excellent presenters; audience seemed unintimated to ask questions which is not always the case in large trainings.
14. Presentations were great and very informative!
15. More training like this please.
16. Role players were fantastic.

Thank you again Christine, Creston, Gail, and Renae!

Jonathan


Jonathan Smith

Attorney

U.S. Department of Veterans Affairs

OGC North Atlantic District

200 Springs Road, Bldg. 61

Bedford, MA 01730-1198

Cell Phone: (781) 971-0870

Fax: (202) 495-6322

Email: Jonathan.Smith4@va.gov

2/17/25, 9:11 PM                                    Gmail - FW: Let's Celebrate Jonathan, Gail, Christine, Renae, and Creston!

                                                    Gail Schechter <gail.schechter@gmail.com>

**FW: Let's Celebrate Jonathan, Gail, Christine, Renae, and Creston!**

**Schechter, Gail (OGC)** <Gail.Schechter@va.gov>                          Thu, Feb 13, 2025 at 7:31 PM
To: Gail Schechter <gail.schechter@gmail.com>

**From:** Rattray, Daniel C. (OGC) (he/him/his) <Daniel.Rattray@va.gov>
**Sent:** Thursday, December 19, 2024 4:32 PM
**To:** Schechter, Gail (OGC) (she/her/hers) <Gail.Schechter@va.gov>; Beam, Christine M. (OGC) <Christine.Beam@va.gov>; Davis, Nelda R. (OGC)
(she/her/hers) <Nelda.Davis@va.gov>; Rice, Creston (OGC) <creston.rice@va.gov>; Smith, Jonathan M. (OGC) <Jonathan.Smith4@va.gov>
**Cc:** OGC North Atlantic District Supervisors <OGCNorthAtlanticDistrictSupervisors@va.gov>
**Subject:** Let's Celebrate Jonathan, Gail, Christine, Renae, and Creston!



**From:** Smith, Jonathan M. (OGC) <Jonathan.Smith4@va.gov>
**Sent:** Thursday, December 19, 2024 3:45 PM
**To:** OGC North Atlantic District Supervisors <OGCNorthAtlanticDistrictSupervisors@va.gov>
**Cc:** Schechter, Gail (OGC) (she/her/hers) <Gail.Schechter@va.gov>; Beam, Christine M. (OGC) <Christine.Beam@va.gov>; Davis, Nelda R. (OGC)
(she/her/hers) <Nelda.Davis@va.gov>; Rice, Creston (OGC) <creston.rice@va.gov>
**Subject:** AIB Training Feedback

Good Afternoon All!

https://mail.google.com/mail/u/0/?ik=0b41b2f089&view=pt&search=all&permmsgid=msg-f:1823990740987971126&simpl=msg-f:1823990740987971126    1/2

How Was Our Service Today?                                                    SurveyMonkey

## Q7

Rate our courtesy and professionalism:

☆                                                              **Outstanding**

## Q8

What was particularly notable to you?

Gail is just an easy person to work with. She is responsive and helpful.

## Q9                                              **No**

Would you like us to contact you?

### Page 2

## Q10                                          **Respondent skipped this question**

Your Contact Information:

📞 336.631.5014

*We want your feedback about your customer experience.*

**VA Protects Whistleblowers:  All VA employees have the right to make protected disclosures to Congress, OAWP, OIG, OSC, and other entities a retaliation. You are not limited to your supervisory chain when making a protected disclosure.**

---

📄 **Response_1149_250106 Gail.pdf**
62K

2/17/25, 9:12 PM                                    Gmail - FW: Let's Celebrate Gail's Exceptional Customer Service!

 Gmail                                                Gail Schechter <gail.schechter@gmail.com>

**FW: Let's Celebrate Gail's Exceptional Customer Service!**

Schechter, Gail (OGC) <Gail.Schechter@va.gov>
To: Gail Schechter <gail.schechter@gmail.com>

From: Rattray, Daniel C. (OGC) (he/him/his) <Daniel.Rattray@va.gov>
Sent: Monday, January 6, 2025 12:27 PM
To: Schechter, Gail (OGC) (she/her/hers) <Gail.Schechter@va.gov>
Cc: OGC North Atlantic District Supervisors <OGCNorthAtlanticDistrictSupervisors@va.gov>
Subject: Let's Celebrate Gail's Exceptional Customer Service!



Daniel C. Rattray (he/him/his)

Chief Counsel, North Atlantic District

*I*DEA Influencer*



Office of General Counsel

U.S. Department of Veterans Affairs

🌐 va.gov/ogc/

How Was Our Service Today? SurveyMonkey

# #1,149

**COMPLETE**

| | |
|---|---|
| **Collector:** | Web Link 1 (Web Link) |
| **Started:** | Monday, January 06, 2025 9:37:42 AM |
| **Last Modified:** | Monday, January 06, 2025 9:39:11 AM |
| **Time Spent:** | 00:01:28 |
| **IP Address:** | 152.130.15.103 |

Page 1

### Q1

Please identify your facility:

VISN 2 New Jersey

### Q2

Your name (optional):

Jose Gonzalez

### Q3

Who provided service to you?

Gail Schechter

### Q4

What service did we provide?

Assistance with ULP

### Q5

Rate the quality of our service:

☆ **Outstanding**

### Q6

Rate the timeliness of our service:

☆ **Outstanding**



Daniel C. Rattray (he/him/his)

Chief Counsel, North Atlantic District

Office of General Counsel

U.S. Department of Veterans Affairs

🌐 va.gov/ogc/

📞 336.631.5014

*We want your feedback about your customer experience.*



**VA Protects Whistleblowers:  All VA employees have the right to make protected disclosures to Congress, OAWP, OIG, OSC, and other entities and offices, without fear of retaliation. You are not limited to your supervisory chain when making a protected disclosure.**

2/17/25, 9:14 PM                                          Gmail - FW: Time to Celebrate Gail!

 Gmail                                                    Gail Schechter <gail.schechter@gmail.com>

**FW: Time to Celebrate Gail!**

**Schechter, Gail (OGC)** <Gail.Schechter@va.gov>                                Thu, Feb 13, 2025 at 7:31 PM
To: Gail Schechter <gail.schechter@gmail.com>

**From:** Berger, Michael J. OGC <Michael.Berger3@va.gov>
**Sent:** Monday, January 27, 2025 3:21 PM
**To:** Rattray, Daniel C. (OGC) (he/him/his) <Daniel.Rattray@va.gov>; Schechter, Gail (OGC) <Gail.Schechter@va.gov>
**Cc:** OGC North Atlantic District Supervisors <OGCNorthAtlanticDistrictSupervisors@va.gov>
**Subject:** RE: Time to Celebrate Gail!

Way to go, Gail!  It is nice to see appreciation for you from Rita Rivera.  Your attention to detail caught a flaw in an advanced directive; which gives the
Veteran an opportunity to have it revised.  Ultimately, your review protected the interests of the Veteran.

Keep it up!

Best, Michael

**From:** Rattray, Daniel C. (OGC) (he/him/his) <Daniel.Rattray@va.gov>
**Sent:** Monday, January 27, 2025 2:55 PM
**To:** Schechter, Gail (OGC) <Gail.Schechter@va.gov>
**Cc:** OGC North Atlantic District Supervisors <OGCNorthAtlanticDistrictSupervisors@va.gov>
**Subject:** Time to Celebrate Gail!

How Was Our Service Today?                                                  SurveyMonkey

**Q7**

Rate our courtesy and professionalism:

☆                                                    **Outstanding**

**Q8**

What was particularly notable to you?

How Gail found that the POA did not contain a signature and therefore void but the AD/HCP was complete.

**Q9**                                                **No**

Would you like us to contact you?

Page 2

**Q10**                                              **Respondent skipped this question**

Your Contact Information:

How Was Our Service Today?                                                              SurveyMonkey

# #1,151

**COMPLETE**

**Collector:** Web Link 1 (Web Link)
**Started:** Tuesday, January 21, 2025 2:29:41 PM
**Last Modified:** Tuesday, January 21, 2025 2:31:24 PM
**Time Spent:** 00:01:43
**IP Address:** 152.133.6.135

Page 1

### Q1

Please identify your facility:

VA NY Harbor

### Q2

Your name (optional):

Rita Rivera

### Q3

Who provided service to you?

Gail Schechter

### Q4

What service did we provide?

reviewing AD and POA

### Q5

Rate the quality of our service:

☆                                                          **Outstanding**

### Q6

Rate the timeliness of our service:

☆                                                          **Outstanding**

 Gmail                                    **Gail Schechter <gail.schechter@gmail.com>**

## OSC COMPLIMENT

**Gail Schechter** <gail.schechter@gmail.com>                    Sun, Feb 23, 2025 at 2:34 PM
To: Gail Schechter <gail.schechter@gmail.com>

Sent from my iPhone

    **Screenshot 2025-02-23 at 2.33.45 PM.jpeg**
378K

2/23/25, 2:36 PM                                                    Gmail - Customer Compliment

 Gmail                                    **Gail Schechter <gail.schechter@gmail.com>**

## Customer Compliment

**Gail Schechter** <gail.schechter@gmail.com>                   Sun, Feb 23, 2025 at 2:36 PM
To: Gail Schechter <gail.schechter@gmail.com>

Sent from my iPhone

                   **Screenshot 2025-02-23 at 2.35.49 PM.jpeg**
                                       402K

2/23/25, 2:48 PM                                        Gmail - good work on a par

 Gmail                                        **Gail Schechter <gail.schechter@gmail.com>**

## good work on a par

**Gail Schechter** <gail.schechter@gmail.com>                    Sun, Feb 23, 2025 at 2:48 PM
To: Gail Schechter <gail.schechter@gmail.com>

Sent from my iPhone

**2 attachments**


**IMG_7089.jpg**
731K


**IMG_7090.jpg**
1128K

2/23/25, 2:41 PM                                    Gmail - text compliment

 Gmail                                    **Gail Schechter <gail.schechter@gmail.com>**

---

## text compliment

**Gail Schechter** <gail.schechter@gmail.com>                    Sun, Feb 23, 2025 at 2:41 PM
To: Gail Schechter <gail.schechter@gmail.com>

Sent from my iPhone

---

**2 attachments**

    **IMG_7110.PNG**
                        1112K

    **IMG_7111.PNG**
                        706K

 Gmail

**Gail Schechter <gail.schechter@gmail.com>**

## 2/6 Compliment
1 message

**Gail Schechter** <gail.schechter@gmail.com>                    Sun, Feb 23, 2025 at 2:38 PM
To: Gail Schechter <gail.schechter@gmail.com>

Sent from my iPhone





**View recent photos.jpeg**
313K

≡  M Gmail          🔍 berger                                    ✕  ⁂        ⓘ  ⚙  ✦  ⠿  

✉

Schechter, Gail (OGC)                                     Thu, Feb 13, 1:31 PM (10 days ago)
to me

**From:** Berger, Michael J. OGC <Michael.Berger3@va.gov>
**Sent:** Monday, January 27, 2025 3:21 PM
**To:** Rattray, Daniel C. (OGC) (he/him/his) <Daniel.Rattray@va.gov>; Schechter, Gail (OGC) <Gail.Schechter@va.gov>
**Cc:** OGC North Atlantic District Supervisors <OGCNorthAtlanticDistrictSupervisors@va.gov>
**Subject:** RE: Time to Celebrate Gail!

Way to go, Gail!  It is nice to see appreciation for you from Rita Rivera.  Your attention to detail caught a flaw in an advanced directive; which gives the Veteran an opportunity to have it revised.  Ultimately, your review protected the interests of the Veteran.
Keep it up!
Best, Michael

**From:** Rattray, Daniel C. (OGC) (he/him/his) <Daniel.Rattray@va.gov>

 Gmail                                   **Gail Schechter <gail.schechter@gmail.com>**

## time off award

**Gail Schechter** <gail.schechter@gmail.com>                     Sun, Feb 23, 2025 at 2:43 PM
To: Gail Schechter <gail.schechter@gmail.com>

Sent from my iPhone

   **IMG_7038.jpg**
1709K

# EXHIBIT 4

| **Department of Veterans Affairs** | **PERFORMANCE APPRAISAL** |

*This form is to be used for non-supervisory Title 5/Hybrid Title 38 employees. Instructions for completing this form may be found at http://www.va.gov/OHRM/EmployeeRelations/ under the Performance tab. For additional information, see VA Handbook 5013, Part I. If additional space is needed for any item on this form, use page 6, Section I, or attachment pages.*

## SECTION A: PERFORMANCE PLAN AND APPRAISAL OF

| EMPLOYEE'S NAME *(Last, First, Middle Initial)* | POSITION TITLE, SERIES AND NUMBER | PAY PLAN - GRADE |
|---|---|---|
| SCHECHTER, GAIL | GENERAL ATTY (VETERANS), 0905, 90053638 | GS-14 |

| DEPARTMENT/OFFICE | SERVICE | LOCATION *(City, State)* |
|---|---|---|
| NORTH ATLANTIC DISTRICT T1 | NORTH ATLANTIC DISTRICT T1 | BROOKLYN NY |

| DATE ASSIGNED PRESENT POSITION | PERIOD COVERED BY THIS PERFORMANCE PLAN | |
|---|---|---|
| 05/05/2024 *(MM DD YYYY)* | *(MM DD YYYY)* FROM 05/05/2024 | *(MM DD YYYY)* TO 09/30/2024 |

| SIGNATURE AND TITLE OF RATER PREPARING THIS PERFORMANCE PLAN | DATE *(MM DD YYYY)* | SIGNATURE OF EMPLOYEE | DATE *(MM DD YYYY)* |
|---|---|---|---|
| Electronically signed by: Michael J Berger, SUPERVISORY GENERAL ATTY (VETERANS) | 06/10/2024 | Electronically signed by: Gail Schechter | 06/10/2024 |

## SECTION B: PERFORMANCE PLAN

*Each performance plan must include all elements that will be used to assign an overall rating. Performance plans must contain at least one critical and one noncritical element. Each critical and noncritical element usually contains three to five performance standards. See VA Handbook 5013 Part I for additional guidance regarding mandatory performance standards, and planning performance plans. Critical elements will be denoted by an asterisk (\*).*

PERFORMANCE ELEMENTS/PERFORMANCE STANDARDS

### Element 1: STAKEHOLDER SERVICE (0905) GS-11T14 *

Description:

This element relates to the service that the attorney provides to clients and stakeholders. The attorney cultivates productive professional relationships with external stakeholders to achieve organizational plans, policies, or goals. The attorney seeks to understand and proactively meet stakeholder needs. The necessity for unplanned supervisory intervention in matters/cases/communications with stakeholders is/are rare.

Standard 1:  Problem Solving and Risk Mitigation

**Problem Solving and Risk Mitigation (0905) GS-13T14**

Stakeholder needs and expectations are routinely considered in making decisions, devising solutions, and resolving conflicts. Proactively assists in problem-solving efforts to devise options and assess risk levels for each option. Provides Stakeholders with analyses of important developments, cases, issues, risks, or trends.

**Problem Solving and Risk Mitigation (0905) GS-11T12**

Stakeholder needs and expectations are routinely considered in making decisions, devising solutions, and resolving conflicts. Proactively assists in problem-solving efforts to devise options and assess risk levels for each option. Provides Stakeholders with analyses of risk related to the issue or legal matter.

Standard 2:  Communication and Responsiveness

Advice to stakeholders is readily understandable and allows the stakeholder to act on the response/advice given.  Effectively communicates with clients by providing status updates and answering questions. Sets expectations with stakeholder regarding method, frequency, and timeframes of communication. Any anticipated delays are communicated to the stakeholder in advance.

Standard 3:  Stakeholder Feedback

## SECTION B: PERFORMANCE PLAN

Feedback from stakeholders indicates satisfaction with the legal service provided and the interactions with the attorney, even when the desired outcome is not attained. Feedback may come from clients, coworkers, surveys, or other sources.

Standard 4:  Service Recovery

Effectively improves stakeholder service when addressing stakeholder issues and complaints and implements improvements to prevent future occurrences.

### Element 2: CASE DEVELOPMENT AND MANAGEMENT (0905) GS-11T14 *
Description:

The attorney is responsible for ensuring that cases assigned are properly, timely, and completely developed in accordance with all applicable rules of professional responsibility, court rules, OGC conventions and time entry, and office procedures. The attorney must exercise sound legal judgment in the development of the work product and determining what actions to take.

Standard 1:  Management

**Management (0905) GS-13T14**

Efficiently manages the matter to include internal OGC coordination, thorough case assessment, case planning actions and timelines, and coordination amongst stakeholders. Meets all timeframes and deadlines set by courts and administrative tribunals and dictated by sound legal judgement (e.g., filing motions, engaging in discovery, and preparing witnesses for trial). Reasonably meets timeframes and deadlines set by leadership or negotiated with the client.

**Management (0905) GS-11T12**

Co-manages or manages the matter under supervision to include internal OGC coordination, case assessment (with consultation as needed), case planning actions and timelines, and coordination amongst stakeholders. Meets all timeframes and deadlines set by courts and administrative tribunals and dictated by sound legal judgement (e.g., filing motions, engaging in discovery, and preparing witnesses for trial). Reasonably meets timeframes and deadlines set by leadership or negotiated with the client.

Standard 2:  Legal Reviews

Completes legal reviews for legal soundness and accuracy withing established deadlines, responds to PARS withing 9 days at least 85% of the time, and manages client consultation requests.

Standard 3:  Productivity

You handle assigned work and when you have capacity to do so you assist others. Exceptional performance includes the attorney taking initiative to volunteer for additional work.

### Element 3: LEGAL RESEARCH AND WRITING (0905) GS-11T14
Description:

The attorney is responsible for analyzing the factual and legal issues presented and what legal sources are applicable. The attorney must be able to identify the issue and what authority governs in that instance, and then present the findings in a convincing oral or written manner so that the client or trier of fact is appropriately informed. Arguments, advice, or opinions are supported with relevant facts and applicable law and policy, and any contrary law is acknowledged as appropriate.

Standard 1:  Legal Analysis

**Legal Analysis (0905) GS-13T14**

## SECTION B: PERFORMANCE PLAN

Prepares written and oral communications, memoranda or reports outlining the facts and legal issues, independently analyzing the factual and legal issues involved, explaining the application of legal principles and precedents, and justifying recommendations or conclusions. Legal positions are argued effectively for the appropriate relief or recommended resolution. Recommendations are consistent with facts, argument, and current office policy. Legal analyses reflect and understanding of laws, legal opinions, policies, regulations, legal texts, and precedent cases.

### Standard 1: Legal Analysis (0905) GS-11T12

Prepares written and oral communications, memoranda or reports outlining the facts and legal issues, analyzing the factual and legal issues involved, explaining the application of legal principles and precedents, and justifying recommendations or conclusions with assistance/guidance from the supervisor, peer, or mentor as needed. Legal analyses reflect and understanding of laws, legal opinions, policies, regulations, legal texts, and precedent cases.

### Standard 2:   Pleadings or Work Product

Pleadings or work product demonstrate expertise of the subject-matter. If appropriate, standardized pleadings or templates used are the most recent version and are tailored according to the facts.

### Element 4: PROFESSIONAL RESPONSIBILITY AND ACCOUNTABILITY (0905) GS-11T15
Description:

Attorneys must adhere to the standards of ethical conduct in the state in which they are licensed. The attorney must also demonstrate behavior that aligns with VA's core values of Integrity, Commitment, Advocacy, Respect, and Excellence (ICARE). The attorney takes ownership to correct, mitigate, and overcome errors, problems, challenges, and issues that could substantially impact the office, OGC, the Department, and Veterans, and takes affirmative steps to report preventable errors, mistakes, issues, and unanticipated negative outcomes to leadership's attention. The attorney exercises good judgment in safeguarding confidential information, follows agency data management and data security policies.

### Standard 1:   Obligations

Complies with the professional obligations of a lawyer and adheres to VA's ICARE core values. Understands the professional accountability for the paralegal assigned to the case.  Identified missed deadlines, missed appearances, notice of intent to issue sanctions against the Agency, sanctions issued against the Agency, Orders to Show Cause adverse to the Agency interests or against the attorney, Orders to Compel, are immediately reported to the supervisor, or other appropriate leadership if the supervisor is unavailable.

### Standard 2:   Data Policies

Adheres to VA data management and data security policies in safeguarding confidential information.

### Standard 3:   Mandatory Training

Completes mandatory training within assigned deadlines 80% of the time.

### Element 5: GCLAWS (0905) GS-11T15
Description:

The attorney is responsible to ensure that data, documents, and information in GCLAWS sufficiently reflect the legal services produced and delivered and the time required to produce and deliver those services. The attorney must consistently and timely enter data, documents, and information in GCLAWS that are accurate, clear, complete, current, and valid.

### Standard 1:   Conventions

Utilizes GCLAWS system for time and note entry in accordance with office requirements and conventions.

## SECTION B: PERFORMANCE PLAN

Standard 2:  Accuracy

Maintains accurate and transparent case file information using OGC's time and case management system(s). GCLAWS accurately reflects your service to clients and time expenditure and contains all relevant documents.

Standard 3: Timeliness

Enters notes at a time that most accurately reflects the current status of the case and can be relied upon by others in determining next steps. Fully Successful enters notes within 10 days of the case action 90% of the time. Exceptional enters notes within 10 days of the case action 95% of the time. All cases are closed in GCLAWS expeditiously after legal advice is rendered. Seldom do cases that should be closed appear on the audits as cases with no activity in the last 30 days.  Cases flagged to be closed on an audit will be closed or updated for accuracy within 5 business days.

## Element 6: COOPERATION AND ORGANIZATIONAL SUPPORT (0905) GS-11T14

Description:

This element relates to the attorney's functioning and interacting with other employees within the Office and OGC. The attorney must be courteous, respectful, and cooperative, must follow instructions conscientiously, and effectively communicate competing priorities. The attorney must also assist others when needed to improve outcomes and adjust to change and work pressures willingly. Differences of opinion are handled in a professional manner. The attorney models the "DNA Way."

Standard 1:  Collegiality

Develops and maintains cooperative, collegial, effective, and professional relationships at work. Takes initiative to build connections in the office and support others. Takes initiative to improve and refine the working environment or work systems, structures, and processes. Takes initiative to assist with the growth and development of others.

Standard 2:  Initiative

Takes initiative to build connections in the office and support others. Takes initiative to improve and refine the working environment or work systems, structures, and processes. Takes initiative to assist with the growth and development of others.

Standard 3:  Coordinated Team Service

The attorney cultivates relationships with paralegals to produce and deliver legal services.

| SECTION C: CHANGES TO PERFORMANCE PLAN | | *(Changes may be recorded anytime during the rating period.)* | |
|---|---|---|---|
| ELEMENT TITLE | | | |
| PERFORMANCE STANDARD(S) | | | |
| SIGNATURE OF RATER | DATE *(MM DD YYYY)* | SIGNATURE OF EMPLOYEE | DATE *(MM DD YYYY)* |

## SECTION D: PROGRESS REVIEW

At least one progress review is required during the appraisal period. The employee must be informed of his/her level of progress as measured against the performance plan. Additional progress reviews may be documented in section I.

A progress review was conducted and discussed, and the employee's performance as of this date:

☐ Is considered Fully Successful or better.

☐ Needs improvement to be Fully Successful or better. *(See VA Handbook 5013, Part I, for additional information regarding addressing unacceptable performance.)*

| SIGNATURE OF RATER | DATE *(MM DD YYYY)* | SIGNATURE OF EMPLOYEE | DATE *(MM DD YYYY)* |
|---|---|---|---|
| | | | |

## SECTION E: ACTUAL ACHIEVEMENT

List each ELEMENT from Section B of the employee's performance plan where indicated below, and indicate the overall level of achievement that best describes the employee's performance for each element. Do not indicate achievement for each individual performance standard. Justification, including specific examples of performance for each element that was rated Exceptional or Unacceptable, must be provided in the space below. Rating an element Exceptional means that Fully Successful performance standards have been significantly surpassed for ALL standards within that particular element. This level is reserved for employees whose performance in the element far exceeds normal expectations, and results in major contributions to the accomplishment of organizational goals.

Prior to assigning an Unacceptable level of achievement, ensure applicable policy requirements have been met as required in VA Handbook 5013, Part I.

| ELEMENTS *(Use the same Elements as listed in Section B)* | LEVELS OF ACHIEVEMENT | | |
|---|---|---|---|
| | EXCEPTIONAL | FULLY SUCCESSFUL | UNACCEPTABLE *(See instructions above)* |
| STAKEHOLDER SERVICE (0905) GS-11T14 * | [X] | ☐ | ☐ |
| CASE DEVELOPMENT AND MANAGEMENT (0905) GS-11T14 * | ☐ | [X] | ☐ |
| LEGAL RESEARCH AND WRITING (0905) GS-11T14 | [X] | ☐ | ☐ |
| PROFESSIONAL RESPONSIBILITY AND ACCOUNTABILITY (0905) GS-11T15 | [X] | ☐ | ☐ |
| GCLAWS (0905) GS-11T15 | [X] | ☐ | ☐ |
| COOPERATION AND ORGANIZATIONAL SUPPORT (0905) GS-11T14 | [X] | ☐ | ☐ |

Use this section to provide justification, including specific examples of performance, for each element that was rated Exceptional or Unacceptable. (Specific achievements at the Fully Successful level are optional.)

JUSTIFICATION:

**STAKEHOLDER SERVICE (0905) GS-11T14**

BERGER, MICHAEL | 11/06/2024 | Final Review Comment

**Stakeholder Service:**

I concur with Ms. Schechter's self-assessment regarding Stakeholder Service.

**Standard 1: Problem Solving and Risk Mitigation**

As a new member of our OGC team, Ms. Schechter has been exposed to a variety of clients, but her primary responsibilities are to handle a bulk of legal work arising from the New Jersey VA Health Care System (NJHCS) and the New York Harbor Healthcare System (NYHHS). Ms. Schechter fostered and maintained exceptional relationships with stakeholders throughout Fiscal Year 24. She also worked on a number of cases for clients in VACO; Ms. Shechter built relationships while doing so. Ms. Schechter spotted issues and provided guidance on both micro and macro levels; she considered clients' needs, and objectives beyond the immediate matter that they asked her to address. In order to provide the most valuable legal guidance, Ms. Schechter took time to get to know the clients and their respective interests and objectives. When guiding clients, Ms. Schechter substantively analyzed the issue presented, advised on potential issues that could develop for the client, and discussed related options to avoid those potential, and/or related problems. As she noted in her self-assessment, an example of this was when she advised on a PAR arising from EMS at NYHHS, she understood the client's concern that the EMS Service Chief position was vacant, and there was a high turnover of the Acting role. She worked with the client and HR, ultimately advising that the proposing official should be the Associate Director instead of the Acting Chief.

Ms. Schechter took advantage of her almost 20-years in VA (prior to her career as an attorney) to leverage her relationships with stakeholders to assist the client in addressing issues; she built trust quickly. As she noted in her self-assessment, when Ms. Schechter was contacted to review a question regarding one campus, she was able to guide the NYHHS to design an equine therapy program for all three campuses.

Ms. Schechter counseled her clients on risk mitigation. She informed and educated client leadership about legal developments, cases, etc., and assisted them to integrate this information into their decision-making and planning. She worked with the NJ HR team to strategize on labor relations practices, and shape responses to grievances; her guidance put the Agency on better footing should the Union take cases to the FLRA. Ms. Schechter effectively updated the client on exposure to liability as litigation progressed. She always made the client aware of the risks involved in moving forward with a litigation case and the alternatives available to the Agency. Ms. Schechter embraced her role as Agency Counsel, and while she advocated that the client adopts certain positions, she remained clear that it was the client's

decision on how to proceed.

**Standard 2: Communication and Responsiveness**

Stakeholders demonstrated that they feel as if Ms. Schechter was their strategic partner in achievement of their objectives; they understood a clear path forward based on the communications from Ms. Schechter. Ms. Schechter's communication with the client was thorough, clear, complete, and actionable. She strived to utilize the most effective form of communication. At all times she acted professionally with client, colleagues, judges, and opposing counsel. Ms. Schechter acknowledges e-mails quickly, and provides timely responses, which are comprehensive. In the unusual circumstance when Ms. Schechter cannot address an e-mail right away, she lets the client know when a more fulsome response will follow. The clients repeatedly commend Ms. Schechter for her quality and timely work. Stakeholders demonstrated that they learned from Ms. Schechter's legal services and used OGC services better in the future.

Ms. Schechter was readily available, and clients reached out to her by teams, often with little notice. Stakeholders felt that Ms. Schechter was their strategic partner in achievement of their objectives. Ms. Schechter was perceived as on-call and as an in-house counsel by the client and regarded as an expert.

**Standard 3: Stakeholder Feedback**

Stakeholders reached out to praise Ms. Schechter. Ms. Schechter regularly sent out the client survey, and always received positive feedback. Ms. Schechter developed relationships with clients, and worked on building an effective feedback loop. NJ Privacy Officer Towanda Smith complimented Ms. Schechter's "expedient service." VISN 2 HR complimented Ms. Schechter for being available, easy to work with and willing to meet multiple times in order to make sure that the best guidance was obtained and understood.

**Standard 4: Service Recovery**

Ms. Schechter routinely reviewed DNA's Service Recovery Plan and maintained a roadmap for redress of such should any issue arise. Ms. Schechter did not make any mistakes to the detriment of the agency. Ms. Schechter understood DNA's Service Recovery plan and remained ready to implement it. On the rare occasion that Ms. Schechter perceived that she could have delivered a service in a better way than initially done, she immediately contacted her supervisor, developed a plan to better assist the client, discussed it with the client and implemented the plan. As she noted in her self-assessment, Ms. Schechter, early on in her tenure with OGC, was re-opening PARS inconsistently with the OGC conventions; she quickly identified her administrative error, let her supervisor know about it, and readjusted her practice. Another example is that Ms. Schechter asked an RMO to respond to an e-mail regarding a supplemental affidavit by July 13, 2024, when in fact she meant June 13, 2024. Ms. Shechter let her supervisor know of the error, implemented her recovery plan and told the RMO of the mistake. The Agency was not jeopardized, and trust was built with the client.

I concur with the following employee provided narrative.

"

**Standard 1: Problem Solving and Risk Mitigation**

Worked with clients to understand short and long-term goals. For example, prior to discussing PARs with HR Specialists took time to discuss objectives and issues not contained within the four corners of the documents. One example included EMS PAR's for the Harbor with a proposing official of the AD rather than the service chief. Rationale for the client was high turnover of Acting Service Chiefs. Connections made with HR Specialists allowed for more thorough and accurate feedback.

Consistently demonstrated ingenuity leverage my close to 20 years of VHA knowledge to assist stakeholder
in addressing their issues. For example, assisted NY Harbor Chief of Recreation in designing a Horse Therapy program for all three campuses (initial task was just the CLC campus) that would provide a system wide program for the Veterans while allowing the Agency to protect itself from litigation.

Meet stakeholders objectives and provided a risk analysis for each option. For example discussed in lieu of termination SF50 if proposal letter was issued versus clean paper resignation if employee resigned prior to proposal letter.

Counseled clients on risk mitigation providing advice an education to client leadership. For example worked with human resource specialists from New Jersey to analyze and shape responses to grievances that would position the Agency for better potential outcomes in FLRA decisions.

### Standard 2: Communication and Responsiveness

Provided and documented process pace timeliness and possible outcomes to stakeholders. Repeat clients demonstrated understanding of the process as evidenced by multiple drafts of pars provided by HR prior to issuance.

Stakeholders have demonstrated an understanding of the path forward as evidenced by returned drafts and memos being correct upon receipt.

I have maintained and established effective and productive relationships with clients. This is demonstrated by compliments and customer satisfaction responses.

I consistently choose the most appropriate means of communication including telephone, TEAMs, and email. Ensuring there is no miscommunication by providing summaries of discussion to my clients.

I routinely keep my clients updated on when I will be able to review their request and timelines for completion.

I consistently receive credit from my HR and SW clients on my responsiveness and timeliness.

I am accessible to stakeholders and maintain an accurate TEAMs status and deploy appropriate out of office messages.

### Standard 3: Stakeholder Feedback

Stakeholders have reached out to praise my understanding of VHA, HR, and VA as a whole my contributions are recognized by clients customers and coworkers.

I routinely send transactional customer service satisfaction surveys after the completion of each case

### Standard 4: Service Recovery

I acknowledge shortfalls and use the service recovery model for example I was closing and reopening PARs extending the time to complete each PARs passed 9 days. When this was pointed out I immediately readjusted my practice, and all pars are closed timely.

---

## CASE DEVELOPMENT AND MANAGEMENT (0905) GS-11T14

BERGER, MICHAEL | 11/06/2024 | Final Review Comment

### CASE MANAGEMENT:

#### Element 1: Management

All of Ms. Schechter's litigation representation cases under supervisory review met or exceeded OGC quality control criteria. There were no deviations from the quality control criteria. Ms. Schechter worked with minimal supervisory intervention; she sought appropriate feedback on novel and high-profile issues. No supervisory intervention was needed with respect to timeliness or case management. Ms. Schechter spent almost 39% of her time on litigation matters. Ms. Schechter is new to OGC, and this is her first year working in an attorney position. She strategized on ways to overcome her inexperience, such as by tapping into her colleague's knowledge, as well as, by leaning on her familiarity with VHA and relationships. She also attended as many trainings as possible, which prepared her to handle the assigned work. She worked early on when assigned to a case to strategize and organize her calendar. Ms. Shechter followed all rules of Professional Responsibility.

Ms. Schechter dug into legal research and investigated all facts of the case to litigate successfully. Ms. Schechter prepared extensively for conferences with judges and settlement discussions in litigation cases. Ms. Schechter analyzed strengths and weaknesses of cases early on, and determined which cases were ripe for settlement.

Ms. Schechter worked with her clients to produce discovery when necessary and made sure to present facts in a strategic way to advance her cases. Her files were impeccably organized, it was easy to look at GCLAWs and the shared drive to understand all activity in her cases.

Ms. Shechter volunteered to take on more work, and assisted her co-workers whenever possible.


## Element 2: Legal Reviews and Consultations

All 14 personnel action reviews assigned during FY24 were completed well within the nine (9) day timeline for closure, averaging roughly 1.29 days to close. Her diligent and well explained review of personnel actions led to the Agency avoiding litigation cases. Ms. Schechter delivered legal services when they had the optimum value to clients. She comprehensively analyzed requests for advice, performed necessary research, advised clients on how to proceed in a way to address the question raised and better meet stakeholder needs.


## Element 3: Productivity

Ms. Schechter reported 691 hours of case time in GCLAWS and worked on 44 case tasks during FY24. Although there is no minimum time requirement in the DNA this rating year, she exceeded the standard of 1300 case hours used by other districts (pro rata for her time with OGC she exceeded that standard by 128%). About 39% of Ms. Schechter's time was spent working on litigation cases (representation, monitoring and assistance to DOJ).


I concur with the following employee provided narrative.

"

## Standard 1: Management

100% of litigation representation cases reviewed this fiscal year met or exceeded OG C quality control criteria for standard practice.

I routinely refine practice and matter management with peers and stakeholders. For example I am consulted by my peers on matters pertaining to human resource management.

I demonstrate timely preparation for initial status conferences as assigned.

I prepare for hearings well in advance of deadlines and prioritize and plan out my litigation calendar to have items do well in advance of deadlines.

I have followed the model rules of professional I responsibility. For example I attended multiple trainings on case management and have employed techniques learned during those trainings into my practice.

I effectively manage my case activities to optimize capacity to serve clients. I engage paralegals and legal assistants to meet litigation demands. For example I asked eligible assistant for guidance on how to use GC laws most effectively instead of asking another attorney this act was shared with the team as a strong practice.

I utilize GC laws to hold my notes including but not limited to e-mail communication with clients and ideas/brainstorming on how to approach cases.

I respond prior to due dates is advantageous to the clients position. During my brief tenure I have it begun to develop SOP's and best practices for case management.

Routinely participate In Group chats and respond to requests to assist both coworkers and clients with their needs. For example I have volunteered to work on a nationwide telework grievance with an attorney and the LMR group.

I fully screen cases for missing facts and identify evidence and issues that need to be addressed prior to moving forward. For example during a recent review of a PAR the HR specialist neglected to include evidence that an employee with a was out on FMLA and then AWOL

for close to a year prior to proposing removal for an expired license. This case was returned and HR pending a complete review of the employees time and leave records.

## Standard 2: Legal Reviews and Consultations

For example suggested to recreation services that horse therapy program for NY Harbor be coordinated under one MOU rather than three separate policies and procedures to streamline process. Recommendation was adopted and endorsed by executive senior leadership.

As of 9/13/24 11 PARS closed with an average days to complete of 1.55 days well below the allowable timeframe.

100% of PARS closed in 9 days or fewer.

Engage in training opportunities offered throughout the fiscal year to increase research skills and knowledge of essential functions of the job. For example, active participant in the National Institute for Trial Advocacy deposition training.

## Standard 3: Productivity

Routinely accept and request opportunities outside of assigned caseload to enhance quality and productivity of work group and my individual skills.

Volunteered to assist clients not regularly assigned including members of other DNA teams. For example completed review PARs for the North Carolina group when they were short staffed.
"

## LEGAL RESEARCH AND WRITING (0905) GS-11T14
BERGER, MICHAEL | 11/06/2024 | Final Review Comment

### LEGAL RESEARCH AND WRITING

I concur with Ms. Schechter's self-assessment regarding Legal Research and Writing.

### Element 1: Legal Analysis

As a newer attorney, at times the legal issue presented by the client were novel to her. Ms. Schechter's legal research and writing were vital to the success of her clients' objectives. She takes time to identify the client's interests and uses her research to find ways to support the clients' choices and give clients confidence in cases, even when there is ambiguity. She utilized mentors within DNA to strategically frame the issues and provide guidance to the client.

Ms. Schechter diligently used cyberfeds and Lexis/Westlaw to ensure she was relying on up-to-date case law. She shared her research and writing with her colleagues and helped them to stay abreast of the developments in relevant case law. Her written communications were exceptionally well-crafted, with clear identification of issues and actionable recommendations. She tailored her approach to suit client preferences, whether through detailed discussions or concise email summaries.

### Element 2: Pleadings or Work Product

Ms. Schechter's communication skills were exemplary, both oral and written. She chose the best method of communication for the circumstances and audience. Ms. Schechter's writing style was clear, easy to follow, engaging, and sophisticated. When drafting motions, she left no stone unturned. She used every fact to her advantage, and made compelling legal arguments to strongly advocate for the Agency's position. Ms. Schechter's legal pleadings were well supported. She independently analyzed the factual and legal issues involved, explained the applicable legal principles and precedents, and justified her arguments and conclusions. Her legal positions were argued effectively. She thoroughly conducted legal research via Cyberfeds, Westlaw/Lexis, and attended trainings to ensure she fully grasped the

subject matter and legal issues. Prior review of communications/pleadings by a supervisor were rare and limited to novel, complex, or controversial matters. Ms. Schechter's emails and GCLAWS notes are superbly crafted with the same expertise.

When providing legal advice to client, she routinely provided legal citations and Handbook provisions in support of her advice. Her legal advice was clear, concise, accurate, and actionable. Her recommendations were consistent with facts, argument, and current policies, regulations, and guidance. Ms. Schechter gave clients clear options on how to proceed with an assessment on risks and recommendations. Clients could immediately act on Ms. Schechter's advice. Additionally, Ms. Schechter assisted colleagues by readily sharing Handbooks, Policies, and relaying her experience with VHA and Human Resources.

I concur with the following employee provided narrative.

"**Standard 1: Legal Analysis**

My legal communications and memorandums are clear effective and demonstrate persuasive well researched arguments. For example, I utilize sample briefs from coworkers and the OGC automated program to ensure complete and thorough arguments.

Communication with clients is clear and concise with citations to appropriate legal references, statutory, regulatory, and VA references are cited as appropriate.

Independently advise and research issues conferring with supervisor on novel or complex issues.

**Standard 2: Pleadings or Work Product**

Communications and writing show a mastery of the English language including but not limited to proper legal citations. Communication is proofread and prior to sending prior to delivery.

Demonstrated mastery of subject matter for example peers regularly consult me on issues relating to the management of a VHA and HR matters.

Review of communications by a supervisor is limited to novel complex or controversial matters.

I routinely share my motions, pleadings and resources with my peers.
"

**PROFESSIONAL RESPONSIBILITY AND ACCOUNTABILITY (0905) GS-11T15**

BERGER, MICHAEL | 11/06/2024 | Final Review Comment

**PROFESSIONAL RESPONSIBILITY AND ACCOUNTABILITY**

I concur with Ms. Schechter's self-assessment regarding Professional Responsibility and Accountability.

**Element 1:  Obligations**

Ms. Schechter consistently demonstrated behavior that aligns with VA's Core Values of Integrity, Commitment, Advocacy, Respect, and Excellence ("ICARE"). She set an example for others regarding ICARE values and held herself independently accountable for her decisions, work, and results. Ms. Schechter distinguished herself in the office as a person of high integrity. She conducted herself with the utmost professionalism in her interactions with others. She demonstrated courage in holding herself and others accountable for honesty and integrity.

When she perceived that a client was heading off course, she did not shy away from informing them. She worked extensively with HR specialists to re-work personnel action reviews to mitigate risk. She made sure that her clients felt confident to perform their duties and equipped to better handle similar situations properly and in the future.

Ms. Schechter actively engaged in internal and external trainings to sharpen her skills and meet the requirements of the New York State

Bar and Department of Veterans Affairs. She is serious about her professional growth and development and stayed abreast and informed on topics important to her career. She attended a broad range of trainings on various topics this fiscal year, many of which were hosted by OGC. When needed, she freely connected with her colleagues to discuss and better understand an issue and gain practical advice about a case. Additionally, during this fiscal year, Ms. Schechter did not miss any deadlines before the tribunal and completed all mandatory training before the due date.

**Element 2: Data Policies**

Ms. Schechter demonstrated trust and trustworthiness. As Ms. Schechter noted in her self-assessment, she kept up to date on all privacy trainings. She exercised caution and safeguarded confidential information and Government provided equipment even while working from home. She disposed of any written materials in locked shredding bins in the office. Ms. Schechter reminded clients of their need to safeguard information.

**Element 3: Mandatory Training**

Ms. Schechter sought out and attended trainings throughout the year to further develop knowledge and skills. She took advantage of opportunities to receive outside trainings and attended in-house trainings which were relevant to her work. She routinely thought of ways to improve the office and the DNA, and sought to improve the quality of work for herself and her colleagues. She completed all mandatory training more than 90% of the time on or before the due date.

I concur with the following employee provided narrative.

"

**Standard 1: Obligations**

I routinely demonstrate ICARE values. For example I volunteered to be a reviewer for the OGC ICARE awards.

I hold myself independently accountable for my work and decisions.

I readily accept feedback take on challenges and street a clear application to OGC and DNA goals. For example took initiative in researching and reviewing various brief banks available to new attorneys.

I resolve conflict should they arise quickly and collaboratively.

I communicate issues I believe might be in violation of ethics rules or not support the VA mission with honesty and integrity.

I take the opportunity to teach others to problem solve for example I spend extensive amounts of time working with human resource specialists to resolve problems with their PARS.

I completed all required training and clearly focused efforts on OGC priorities and desired results.

All documents properly identified and uploaded into GC Laws the same day.

**Standard 2: Data Policies**

I have demonstrated trustworthiness and trust protecting government equipment and information as per policy and ethical guidelines.

**Standard 3: Mandatory Training**

100% of mandatory training completed before the due date.
"

**GCLAWS (0905) GS-11T15**

BERGER, MICHAEL | 11/06/2024 | Final Review Comment

**GCLAWS**

I concur with Ms. Schechter's self-assessment regarding GCLAWS.

**Standard 1: Conventions**

Ms. Schechter optimized her use of GCLAWS, reflecting a superb understanding of the system's functions and compliance with national and district standards. When she had questions about the system, she sought advice from her colleagues, legal assistant and supervisor. Ms. Schechter quickly identified that she was re-opening PARs inconsistently with the conventions and corrected that issue completely. She maintained familiarity with established conventions and was demonstrated in monthly audits, with prompt responses to any case status inquiries. Her meticulous documentation of case activities and time management reflected her commitment to organizational excellence. She used GCLaws to accurately reflect case time and status. Various reports and audits demonstrated her understanding of the system's functions and that she consistently applied established national and districtwide conventions. Ms. Schechter quickly responded to questions about case status audits. Ms. Schechter made sure that her litigation cases were in the appropriate task element, litigation representation or litigation monitoring, depending upon the active nature of the litigation. Ms. Schechter closed HBL/advisory cases promptly after advice was rendered to the client.

**Standard 2: Accuracy**

Ms. Schechter entered 691 hours of case time in GCLAWS. Her note entries were timely and accurately reflected her service to clients, as well as her time expenditure on each task. Ms. Schechter's notes contained all relevant documents. There were no information gaps in her entries. Based on her notes, a colleague could easily understand the roadmap of Ms. Schechter's cases.

**Standard 3: Timeliness**

Ms. Schechter's GCLAWS notes were dependably current. 100% of Ms. Schechter's notes were entered within ten days. On average Ms. Schechter entered her notes within 1.29 days of the time of case action. Case audits demonstrated that Ms. Schechter utilized GCLAWs timely and complied promptly with conventions.

I concur with the following employee provided narrative.

"

**Standard 1: Conventions**

I utilize GCLaws and various GCLaw reports. I follow all GCLaws conventions and consistently apply them to my work. For example I utilize GCLaws to locate sample briefs and documents when researching my cases.

I comply with national conventions to ensure litigation cases are in the appropriate task element, litigation representation or litigation monitoring depending on the nature of the litigation. For example the audits two audits were completed by of my GCLaws entries this fiscal year and there were no findings of cases being in an incorrect status.

**Standard 2: Time Management and Accountability Metric**

From May 5, 2024 through September 4, 2024 I logged 560 hours in GCLaws. If the goal had been 1300 hours for the fiscal year I would be at 129% of that goal prorated.

**Standard 3: Accuracy**

VA FORM
OCT 2015    **0750**    VATANGEPERF

I consistently account for my case hours in GCLaws logging the time in real time.

My GC laws accurately reflects my service to my clients including documents, emails and drafts. I can be depended upon for case history and workload analysis.

### Standard 4: Timeliness

GCLaws notes are current within 24 hours of event.

100% of notes are entered within the 10-day required time frame.

When legal advice is rendered the case is closed expeditiously. It is rare that a case closed that a case that should be closed appears on an audit. There was one recorded incident of a case that should have been closed appearing on an audit this FY. In that case, I had closed the case prior to receiving a copy of said audit. No cases have appeared on consecutive audits.

"

### COOPERATION AND ORGANIZATIONAL SUPPORT (0905) GS-11T14

BERGER, MICHAEL | 11/06/2024 | Final Review Comment

### COOPERATION AND ORGANIZATIONAL SUPPORT

I concur with Ms. Schechter's self-assessment regarding Cooperation and Organizational Support.

### Element 1: Collegiality

Ms. Schechter's commitment to the VA and DNA extended beyond her individual responsibilities. Ms. Schechter actively attended and participated in team calls, District calls, and OGC Calls. During team calls, she often led the discussion. Ms. Schechter cultivated the Brooklyn Team IM Chat and engaged her colleagues by raising topics and questions, as well as engaging colleagues in friendly chat. Ms. Schechter worked to improve and make connections with colleagues within the DNA. She made her colleagues comfortable, and her efforts improved team morale. She played an active role in sharing relevant case developments and organizational updates, enhancing the overall knowledge base within the team.

### Element 2: Initiative

Ms. Schechter took initiative to improve the virtual and in-person office environment: she led many conversations during team calls, in ways that enhanced knowledge, skill, and connection among colleagues. She readily shared knowledge with colleagues; she contributed her extensive VHA and HR experiences during conversations, meetings and on Teams. She reached out to her peers not just to share knowledge and ask questions, but also to connect with them. Ms. Schechter volunteered to be a reviewer for the OGC ICARE Awards, volunteered to be a part of the DNA Database Project Committee and volunteered to conduct AIB training for DNA clients. Ms. Schechter also assisted her colleagues with there casework; for example, her colleague Ms. Comas-Papanikos praised Ms. Schechter for taking it on herself to help with research and working with Elizabeth Hill in VACO to recreate policies in effect in 2014 (which was necessary for a District Court case).

### Element 3: Coordinated Team Service

Ms. Schechter communicated with paraprofessional staff, ensuring that she gave meaningful feedback, and rich conversations. She openly discussed cases status and strategy.

I concur with the following employee provided narrative.

"

### Standard 1: Collegiality

I demonstrate a cooperative collegial and professional relationship at work I strive to be a force behind improving maintaining and improving interpersonal connections. For example, I am quit to respond to group TEAMS messages and to help whenever able.

I routinely assist colleagues, participate in team calls, District Calls, OGC calls and provide one-on-one support when able.

**Standard 2: Initiative**

I participate in flash trainings and round table discussions. I volunteered to be part of the DNA Database Project committee. I also volunteered and will be conducting AIB training with two other OGC attorneys.

**Standard 3: Coordinated Team Service**

I demonstrate rich communication with paralegals and legal assistants soliciting their input and allowing them to participate in all aspects of trial and case preparation.

I openly collaborate with paralegals to discuss case successes and failures.

I describe paralegals as partners.

Relationships with paralegals transcend task-based relationships and extend into broad relationships focused on professional success and growth.

I seek input and feedback from the paralegals I work with to improve the relationships. "

| SECTION F: OVERALL RATING |
| --- |

TYPE OF RATING

[X] ANNUAL RATING OF RECORD    [ ] SPECIAL RATING OF RECORD    [ ] SUMMARY RATING (POSITION CHANGES - EMPLOYEE OR RATER)

PERIOD COVERED BY THIS APPRAISAL *(Complete only for Special Rating of Record or Summary Rating.)*

FROM    *(MM DD YYYY)*    TO    *(MM DD YYYY)*

NOTE: Recommended Performance Rating - Using achievement levels assigned in Section E and the criteria described below, check the appropriate rating.

PERFORMANCE RATING

[ ]    **OUTSTANDING** - Achievement levels for _all_ elements are designated as Exceptional.

[ ]    **EXCELLENT** - Achievement levels for all critical elements are designated as Exceptional. Achievement levels for noncritical elements are designated as at least Fully Successful. Some, but not all, noncritical elements may be designated as Exceptional.

[X]    **FULLY SUCCESSFUL** - The achievement level for at least one critical element is designated as Fully Successful. Achievement levels for other critical and noncritical elements are designated as at least Fully Successful or higher.

[ ]    **MINIMALLY SATISFACTORY** - Achievement levels for all critical elements are designated as at least Fully Successful. However, the achievement level(s) for one (or more) noncritical element(s) is (are) designated as Unacceptable.

[ ]    **UNACCEPTABLE** - The achievement level(s) for one (or more) critical element(s) is (are) designated as Unacceptable.

| SIGNATURE AND TITLE OF RATER | DATE *(MM DD YYYY)* |
| --- | --- |
| Electronically signed by: Michael J Berger<br>SUPERVISORY GENERAL ATTY (VETERANS) | 11/25/2024 |

| SECTION G: HIGHER LEVEL REVIEW/APPROVAL |
| --- |

Required only for Minimally Satisfactory and Unacceptable ratings of record; unless organization has chosen to have higher level approval required for Outstanding ratings of record.

[ ]    Concur with recommended rating.

[ ]    Do not concur with rating. Approve rating of:

EXPLANATION FOR PERFORMANCE RATING CHANGE

| SIGNATURE AND TITLE OF APPROVAL OFFICIAL | DATE *(MM DD YYYY)* |
| --- | --- |
| | |

| SECTION H: EMPLOYEE RECEIPT OF PERFORMANCE APPRAISAL | | |
| --- | --- | --- |
| A copy of this performance appraisal was given to me.    ▶ | SIGNATURE OF EMPLOYEE<br>Electronically signed by: Gail Schechter | DATE *(MM DD YYYY)*<br>11/25/2024 |

## SECTION I: ADDITIONAL COMMENTS/INFORMATION

USE THIS AREA FOR ANY ADDITIONAL INFORMATION

**Progress Reviews**

MICHAEL BERGER | 09/13/2024 | Additional Progress Review

Performance Rating: Is considered Fully Successful or better

**Rating Official Summary Comments:**

BERGER, MICHAEL | 11/06/2024

Ms. Schechter is a GS-14 attorney at the top of her journeyman for the job series. As a new OGC employee and newer attorney, Ms. Schechter exceeded expectations, but is still developing in the GS-14 role. Her trajectory is on track to be one of OGC's shining attorneys. This year, Ms. Schechter's performance is fully successful for that of a GS-14 (which usually is a grade held by experienced attorneys).

OPM Required progress review is not required for this plan because the employee's progress review requirement has already been fulfilled for this appraisal period. Please refer to the 0750 Summary appraisal that was rated from 10/01/2023 to 05/04/2024.

VA FORM
OCT 2019    **0750**    VATANGEPERF

# EXHIBIT 5



Gail Schechter <gail.schechter@gmail.com>

---

## Fw: Termination During Probation Notice

**Schechter, Gail (OGC)** <Gail.Schechter@va.gov>                    Thu, Feb 13, 2025 at 7:16 PM
To: Gail Schechter <gail.schechter@gmail.com>

Gail Schechter

Attorney Advisor

Department of Veterans Affairs

Office of General Counsel

District of the North Atlantic

800 Poly Place, Building 14

Brooklyn, New York 11209

Email: gail.schechter@va.gov

Tel: (718-630-2906)/(347)782-1447

ATTORNEY-WORK PRODUCT - Part or all of this correspondence may be considered 'Attorney-Work Product' or 'Attorney-Client Privileged Information' and, therefore, exempt from release to parties other than the addressee(s) or outside the U.S. Government under the Freedom of Information Act or during litigation.  Do not forward or release this correspondence -- in its original form or included with other correspondence -- to non-client or non-U.S. Government entities without prior coordination with and consent by the Kansas City Office of Regional Counsel or higher headquarters legal office or authority.

---

**From:** Therit, Tracey <Tracey.Therit@va.gov>
**Sent:** Thursday, February 13, 2025 7:00:31 PM
**To:** Schechter, Gail (OGC) <Gail.Schechter@va.gov>
**Subject:** Termination During Probation Notice

February 13, 2025

MEMORANDUM FOR Gail Schechter

FROM:                    Tracey Therit

                         Chief Human Capital Officer

Gmail - Fw: Termination During Probation Notice

SUBJECT:              Notification of Termination During Probationary Period

REFERENCES:          5 U.S.C. § 7511

                     5 U.S.C. § 3321(a)

                     5 C.F.R. §§ 315.803 and 804

This is to provide notification that the Agency is removing you from federal service consistent with the above references.

On 5/5/2024, the Agency appointed you to your position. As documented on your appointment Standard Form 50 (SF-50), your appointment is subject to a probationary/trial period. The agency also informed you of this requirement in the job opportunity announcement for the position.

Guidance from the Office of Personnel Management ("OPM") states, "An appointment is not final until the probationary period is over," and the probationary period is part of "the hiring process for employees."[1] "A probationer is still an applicant for a finalized appointment to a particular position as well as to the Federal service." [2] "Until the probationary period has been completed," a probationer has "the burden to demonstrate why it is in the public interest for the Government to finalize an appointment to the civil service for this particular individual."[3]

The Agency finds, based on your performance, that you have not demonstrated that your further employment at the Agency would be in the public interest. For this reason, the Agency informs you that the Agency is removing you from your position with the Agency and the federal civil service effective February 13, 2025.

You may seek review of this action. Such reviews include:

a.    appealing this action to the Merit Systems Protection Board (MSPB) if you allege you were discriminated against due to marital status or partisan political reasons or your removal was not effected in accordance with the procedural requirements of 5 C.F.R. 315.805; or

b.    requesting corrective action before the Office of Special Counsel (OSC) for prohibited personnel practices; or

c.    pursuing a discrimination complaint with the Office of Resolution Management (ORM).

Please see below for details on your ability to file some of these claims concurrently. If you are not a supervisor, you shall be deemed to have exercised your option to appeal this

action at such time as you timely initiate action to appeal to MSPB. If you believe this action constitutes a prohibited personnel practice, other than discrimination, under 5 U.S.C. § 2302(b), including retaliation for protected whistleblowing, you may elect to file either an appeal to MSPB, or request corrective action from OSC, and your election is based on which election you file first. If you are not a supervisor, your election of one of these options precludes the other. If you are a supervisor, the election of remedies does not apply to you, and you may pursue all three options. If you believe that this action was taken against you for discriminatory reasons, other than marital status or political affiliation, refer to the paragraph immediately below.

Equal Employment Opportunity Commission (EEOC): If you believe this action is based on discrimination on the basis of race, color, religion, sex, national origin, pregnancy, age or disability, you may file a complaint of discrimination. If you elect to file a complaint of discrimination, you may do so by contacting the Office of Resolution Management (ORM) at 1-888-566-3982. Such a complaint will be processed in accordance with EEOC regulations at 29 C.F.R., Part 1614. Your initial contact with the ORM office must be done within 45 calendar days of the effective date of this action.

If this action is also appealable to MSPB, such a discrimination complaint may be a "mixed case complaint," or if you raise the issue of discrimination in any appeal to MSPB, it may be a "mixed case appeal." You may not initially file both a mixed case complaint and a mixed case appeal on the same matter, unless you are a supervisor. If you are not a supervisor, whichever you file first, the MSPB appeal or the complaint of discrimination, will be considered an election to proceed in that forum and will determine the procedures that will be followed. If you are a supervisor, you may elect both MSPB and EEOC.

Merit Systems Protection Board (MSPB): If you appeal to the MSPB, your appeal may be submitted by mail, facsimile, by commercial overnight delivery, by electronic filing the MSPB Appeal Form (https://e-appeal.mspb.gov), or in person at any time after you receive this letter, but not later than 30 calendar days after the separation has been effected, or 30 calendar days after the date of the your receipt of this decision, whichever is later. The address to mail your appeal can be found here: U.S. Merit Systems Protection Board | Contacts and Locations (https://www.mspb.gov/about/contact.htm). You must submit an original and one copy of both your appeal and all attachments. If you do not submit an appeal within the time set by statute, regulation, or order of a judge, it will be dismissed as untimely filed unless a good reason for the delay is shown. The judge will provide you an opportunity to show why the appeal should not be dismissed as untimely. A copy of the form is available by request if you are unable to access it at the MSPB website. Please refer to the MSPB website (www.mspb.gov) for information regarding the appeals process and procedures that must be followed. You may be represented by an attorney or other representative of your choice. If you believe this action was taken against you for discriminatory reasons, refer to the paragraph on EEOC. If you decide to file an appeal with MSPB, you should notify the Board that the agency's point of contact for this appeal is Ochcofrontoffice@va.gov

Office of Special Counsel (OSC): If you elect to request corrective action by the OSC's Complaints Examining Unit (OSC Appeal Form) (https://osc.gov/), your complaint will be limited to a determination as to whether the agency took one or more personnel actions against you in violation of 5 U.S.C. § 2302(b) (prohibited personnel practices). This can include, but is not limited to, claims of reprisal for whistleblowing and/or engaging in protected activity. If you are

not a supervisor and you elect to request corrective action with OSC, you will have waived your right to file an appeal with MSPB (if eligible), regarding the same matter, except as follows. If you are making a covered claim of retaliation for engaging in certain protected activities, or for making protected disclosures and OSC terminates its investigation and/or has not timely notified you it will seek corrective action, you may have the right to file an individual right of action (IRA) appeal to the MSPB. Such an appeal will be limited to an adjudication of whether you proved that your protected activity or disclosure was a contributing factor in the effected action (5 U.S.C. § 1214; 5 U.S.C. § 1221). If you are a supervisor, you may pursue remedies from MSPB and OSC concurrently.

If you are not a supervisor, whichever option you may choose to pursue regarding this action (an appeal to the MSPB, a request for corrective action to OSC, or a discrimination complaint), shall be considered an election by you to proceed under that appeal process. However, if you are not a supervisor, you may still concurrently file a corrective action to OSC and a discrimination complaint. If you are a supervisor, you may elect all three remedies concurrently.

Separating VA employees are required to return their PIV card to their PIV issuing office and their government furnished IT equipment and peripherals to the Office of Information Technology (OIT) for redeployment or disposition.

<u>GFE Equipment</u>

You will immediately take your equipment to the closest VA medical center or 810 Vermont Avenue to turn in your IT equipment. The local OIT staff will collect all assigned government furnished equipment (GFE), including peripherals such as monitors, docking stations, printers, etc.

Regardless of the original issuing site, all local IT teams will accept returned GFE and will adhere to local procedures for equipment accountability.

A return receipt for the equipment will be issued to the employee by local IT staff to acknowledge receipt of the employee's GFE and peripherals.

OIT Facility Requirements

Return any non-IT equipment, office and/or card keys, and PIV card to local facility.

If there is lost equipment a report of survey needs to be completed before you separate.

We appreciate your service to the Agency and wish you the greatest of success in your future endeavors.  If you have any questions concerning this matter or the rights described above, or if you need assistance or additional information, please contact Ochcofrontoffice@va.gov .

/s/

Tracey Therit

---

[1] OPM, *Practical Tips for Supervisors of Probationers*.

[2] *See* U.S. Merit Systems Protection Board Report to the President and Congress, *The Probationary Period: A Critical Assessment Opportunity* (August 2005)

[3] *Id.*

# EXHIBIT 6

This content is from the eCFR and is authoritative but unofficial.

# Title 5 —Administrative Personnel
## Chapter I —Office of Personnel Management
### Subchapter B —Civil Service Regulations
### Part 315 —Career and Career-Conditional Employment

**Authority:** 5 U.S.C. 1302, 3301, and 3302; E.O. 10577, 3 CFR, 1954-1958 Comp. p. 218, unless otherwise noted; and E.O. 13162. Secs. 315.601 and 315.609 also issued under 22 U.S.C. 3651 and 3652. Secs. 315.602 and 315.604 also issued under 5 U.S.C. 1104. Sec. 315.603 also issued under 5 U.S.C. 8151. Sec. 315.605 also issued under E.O. 12034, 3 CFR, 1978 Comp. p.111. Sec. 315.606 also issued under E.O. 11219, 3 CFR, 1964-1965 Comp. p. 303. Sec. 315.607 also issued under 22 U.S.C. 2560. Sec. 315.608 also issued under E.O. 12721, 3 CFR, 1990 Comp. p. 293. Sec. 315.610 also issued under 5 U.S.C. 3304(c). Sec. 315.611 also issued under 5 U.S.C. 3304(f). Sec. 315.612 also under E.O. 13473. Sec 315.613 also issued under Pub. L. 114-47, sec. 2(a) (Aug. 7, 2015), amended by Pub. L. 114-328, sec. 1135 (Dec. 23, 2016), as codified at 5 U.S.C. 9602. Sec. 315.708 also issued under E.O. 13318, 3 CFR, 2004 Comp. p. 265. Sec. 315.710 also issued under E.O. 12596, 3 CFR, 1978 Comp. p. 264.

**Source:** 33 FR 12418, Sept. 4, 1968, unless otherwise noted.

**Subpart H** Probation on Initial Appointment to a Competitive Position

§ 315.801 Probationary period; when required.

§ 315.802 Length of probationary period; crediting service.

§ 315.803 Agency action during probationary period (general).

§ 315.804 Termination of probationers for unsatisfactory performance or conduct.

§ 315.805 Termination of probationers for conditions arising before appointment.

§ 315.806 Appeal rights to the Merit Systems Protection Board.

**Editorial Note:** Nomenclature changes to part 315 appear at 70 FR 72067, Dec. 1, 2005.

## Subpart H—Probation on Initial Appointment to a Competitive Position

### § 315.801 Probationary period; when required.

(a) The first year of service of an employee who is given a career or career-conditional appointment under this part is a probationary period when the employee:

    (1) Was appointed from a competitive list of eligibles established under subpart C of this part;

    (2) Was reinstated under subpart D of this part unless during any period of service which affords a current basis for reinstatement, the employee completed a probationary period or served with competitive status under an appointment which did not require a probationary period.

(b) A person who is:

    (1) Transferred under § 315.501; or

    (2) Promoted, demoted, or reassigned; before he completed probation is required to complete the probationary period in the new position.

(c) A person who is reinstated from the Reemployment Priority List to a position in the same agency and the same commuting area does not have to serve a new probationary period, but, if separated during probation, is required to complete the probationary period in the new position.

(d) Upon noncompetitive appointment to the competitive service under the Postal Reorganization Act (39 U.S.C. 101 *et seq.*), an employee of the Postal Career Service (including substitute and part-time flexible) who has not completed 1 year of Postal service, must serve the remainder of a 1-year probationary period in the new agency.

(e) A person who is appointed to the competitive service either by special appointing authority or by conversion under subparts F or G of this part serves a 1-year probationary period unless specifically exempt from probation by the authority itself.

*[33 FR 12418, Sept. 4, 1968, as amended at 39 FR 962, Jan. 4, 1974; 45 FR 43365, June 27, 1980; 60 FR 54504, Oct. 16, 1995; 65 FR 14432, Mar. 17, 2000]*

## § 315.802 Length of probationary period; crediting service.

(a) The probationary period required by § 315.801 is 1 year and may not be extended.

(b) Prior Federal civilian service (including nonappropriated fund service) counts toward completion of probation when the prior service:

   (1) Is in the same agency, e.g., Department of the Army;

   (2) Is in the same line of work (determined by the employee's actual duties and responsibilities); and

   (3) Contains or is followed by no more than a single break in service that does not exceed 30 calendar days.

(c) Periods of absence while in a pay status count toward completion of probation. Absence in nonpay status while on the rolls (other than for compensable injury or military duty) is creditable up to a total of 22 workdays. Absence (whether on or off the rolls) due to compensable injury or military duty is creditable in full upon restoration to Federal service. Nonpay time in excess of 22 workdays extends the probationary period by an equal amount. An employee serving probation who leaves Federal service to become a volunteer with the Peace Corps or the Corporation for National and Community Service serves the remainder of the probationary period upon reinstatement provided the employee is reinstated within 90 days of termination of service as a volunteer or training for such service.

(d) The probationary period for part-time employees is computed on the basis of calendar time, in the same manner as for full-time employees. For intermittent employees, *i.e.*, those who do not have regularly scheduled tours of duty, each day or part of a day in pay status counts as 1 day of credit toward the 260 days in a pay status required for completion of probation. (However, the probationary period cannot be completed in less than 1 year of calendar time.)

*[60 FR 53504, Oct. 16, 1995]*

## § 315.803 Agency action during probationary period (general).

(a) The agency shall utilize the probationary period as fully as possible to determine the fitness of the employee and shall terminate his or her services during this period if the employee fails to demonstrate fully his or her qualifications for continued employment.

Case 1:25-cv-00551 Document 1-2   Filed 02/24/25   Page 77 of 78

(b) Termination of an individual serving a probationary period must be taken in accordance with subpart D of part 752 of this chapter if the individual has completed one year of current continuous service under other than a temporary appointment limited to 1 year or less and is not otherwise excluded by the provisions of that subpart.

*[73 FR 7187, Feb. 7, 2008, as amended at 85 FR 65982, Oct. 16, 2020; 87 FR 67782, Nov. 10, 2022]*

## § 315.804 Termination of probationers for unsatisfactory performance or conduct.

(a) Subject to § 315.803(b), when an agency decides to terminate an employee serving a probationary or trial period because his work performance or conduct during this period fails to demonstrate his fitness or his qualifications for continued employment, it shall terminate his services by notifying him in writing as to why he is being separated and the effective date of the action. The information in the notice as to why the employee is being terminated shall, as a minimum, consist of the agency's conclusions as to the inadequacies of his performance or conduct.

(b) Probation ends when the employee completes his or her scheduled tour of duty on the day before the anniversary date of the employee's appointment. For example, when the last workday is a Friday and the anniversary date is the following Monday, the probationer must be separated before the end of the tour of duty on Friday since Friday would be the last day the employee actually has to demonstrate fitness for further employment.

*[33 FR 12418, Sept. 4, 1988, as amended at 60 FR 53505, Oct. 16, 1995; 73 FR 7188, Feb. 7, 2008]*

## § 315.805 Termination of probationers for conditions arising before appointment.

Subject to § 315.803(b), when an agency proposes to terminate an employee serving a probationary or trial period for reasons based in whole or in part on conditions arising before his appointment, the employee is entitled to the following:

(a) *Notice of proposed adverse action.* The employee is entitled to an advance written notice stating the reasons, specifically and in detail, for the proposed action.

(b) *Employee's answer.* The employee is entitled to a reasonable time for filing a written answer to the notice of proposed adverse action and for furnishing affidavits in support of his answer. If the employee answers, the agency shall consider the answer in reaching its decision.

(c) *Notice of adverse decision.* The employee is entitled to be notified of the agency's decision at the earliest practicable date. The agency shall deliver the decision to the employee at or before the time the action will be made effective. The notice shall be in writing, inform the employee of the reasons for the action, inform the employee of his right of appeal to the Merit Systems Protection Board (MSPB), and inform him of the time limit within which the appeal must be submitted as provided in § 315.806(d).

*[33 FR 12418, Sept. 4, 1968, as amended at 73 FR 7188, Feb. 7, 2008]*

## § 315.806 Appeal rights to the Merit Systems Protection Board.

(a) *Right of appeal.* An employee may appeal to the Merit Systems Protection Board in writing an agency's decision to terminate him under § 315.804 or § 315.805 only as provided in paragraphs (b) and (c) of this section. The Merit Systems Protection Board review is confined to the issues stated in paragraphs (b) and (c) of this section.

(b) *On discrimination.* An employee may appeal under this paragraph a termination not required by statute which he or she alleges was based on partisan political reasons or marital status.

(c) *On improper procedure.* A probationer whose termination is subject to § 315.805 may appeal on the ground that his termination was not effected in accordance with the procedural requirements of that section.

(d) An employee may appeal to the Board under this section a termination that the employee alleges was based on discrimination because of race, color, religion, sex (including pregnancy and gender identity), national origin, age (as defined by the Age Discrimination in Employment Act of 1967, as amended), or disability. An appeal alleging a discriminatory termination may be filed under this subsection only if such discrimination is raised in addition to one of the issues stated in paragraph (b) or (c) of this section.

*[33 FR 12418, Sept. 4, 1968, as amended at 40 FR 15380, Apr. 7, 1975; 44 FR 48951, Aug. 21, 1979; 55 FR 29339, July 19, 1990; 79 FR 43922, July 29, 2014]*