**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| GAIL SCHECHTER, | ) | |
| | ) | |
| *Plaintiff*, | ) | Case No, 1:25-CV-00551-RC |
| | ) | |
| v. | ) | |
| | ) | |
| DOUGLAS COLLINS, | ) | |
| | ) | |
| *Defendant*. | ) | |
| _____ | ) | |

**PLAINTIFF'S MOTION**
**FOR A PRELIMINARY INJUNCTION**

Comes now Plaintiff, Gail Schechter (hereinafter "Ms. Schechter" or "Plaintiff"), by and through undersigned counsel, with her Motion for a Preliminary Injunction, against Defendant and states as follows:

Until February 13, 2025, Plaintiff was a long-tenured employee of the Veterans Administration (hereinafter "VA"). She was hired in 2006 as a Dietician, and eventually moved in the Human Resources ("HR") function. In 2020, Plaintiff earned a law degree, and for three years while in HR, she used her legal skills and knowledge to work on numerous projects and cases. In May of 2024, Plaintiff was finally offered a position as a lawyer in the General Counsel's office ("OGC"). This role was essentially an extension of the work she had been doing in HR, which is why she was offered the role at the GS-14 level, the highest level for an attorney, rather than at the entry level for an inexperienced attorney.

For the duration of her career with the VA, Plaintiff was an exemplary employee with excellent performance evaluations. She was abruptly terminated on February 13, 2025, ostensibly for poor performance, in a sweeping termination of all probationary employees at the VA. For the

reasons developed in the attached Memorandum of Law, Plaintiff's termination was patently illegal. It violated Plaintiff's due process rights, and is causing irreparable injury to her reputation and ability to find new employment.

Plaintiff moves this Court for injunctive relief. Inasmuch as Defendant has not yet assigned counsel to this case, Plaintiff avers that the Motion is opposed. The attached Memorandum of Law carefully examines the four-part test for the issuance of a preliminary injunction to mitigate the damage being done to Plaintiff by Defendant's unlawful conduct. For the reasons developed therein, Plaintiff is entitled to the relief requested, and this Motion should be GRANTED.

Respectfully submitted

/s/Pamela M. Keith
Pamela M. Keith [Bar. No. 448421]
CENTER FOR EMPLOYMENT JUSTICE
650 Massachusetts Ave. NW
Suite 600
Washington, DC 20001
Tel: (202) 800-0292
Fax: (202) 807-5725
pamkeith@centerforemploymentjustice.com
*Counsel for Plaintiff*

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| GAIL SCHECHTER, | ) | |
| | ) | |
| *Plaintiff*, | ) | Case No, 1:25-CV-00551-RC |
| | ) | |
| v. | ) | |
| | ) | |
| DOUGLAS COLLINS, | ) | |
| | ) | |
| *Defendant*. | ) | |
| _____ | ) | |

**MEMORANDUM OF LAW IN SUPPORT**
**OF PLAINTIFF'S MOTION**
**<u>FOR A PRELIMINARY INJUNCTION</u>**

Comes now Plaintiff, Gail Schechter (hereinafter "Ms. Schechter" or "Plaintiff"), by and through undersigned counsel, with her Motion for a Preliminary Injunction, against Defendant and states as follows:

**<u>INTRODUCTION</u>**

Plaintiff was a high-performing employee of the Veterans' Administration (hereinafter "VA") from 2006 until her abrupt termination on or about February 13, 2025. She was terminated because she was wrongfully classified as a probationary employee in the Office of General Counsel ("OGC"). In the underlying Complaint, Plaintiff alleges that she should have never been a probationary employee, and that the determination that she not be given credit for her time and experience in the Human Resources department ("HR") was arbitrary and capricious. More importantly, Plaintiff alleges that her termination, ostensibly for poor performance, was without basis in fact, and was pretext for an illegal and unjustifiable motive in her termination.

Plaintiff now moves the Court for injunctive relief, to immediately reinstate her to her position as an attorney at the VA. The Office of Special Counsel recently found that terminations

of probationary employees without a shred of evidence of poor performance clearly violates 5 C.F.R. §315.804. Based on this holding, Plaintiff asks this Court to intercede immediately because Plaintiff can fully meet the criteria for the issuance of preliminary injunctive relief. Plaintiff thus asks this Court for an ORDER reinstating her to her previous position while she litigates the underlying issues in order to avoid irreparable harm to her and her professional reputation.

## RELEVANT FACTS

Plaintiff began her employment with the VA in 2006 as a Supervisory Dietician. *See* Comp. ¶ 9. In 2021 she transitioned to HR, where she served as a Human Resources specialist, and in 2022 she was promoted to an HR Supervisor. *See* Comp. ¶ 10. In 2023, she took a lateral move to be an executive HR specialist. *See* Comp. ¶ 13. During her tenure in Human Resources, 90% of Plaintiff's was spent working on either (i) disciplinary actions, (ii) investigating complaints and researching legal strategies to respond to third parties, or (iii) defending the agency in grievances, arbitrations, Unfair Labor Practice charges and Federal Labor Relations Act claims. *See* Comp. ¶ 14. In some instances Plaintiff reviewed and revised the work of subordinate employees, and at other times she did the work directly, depending on the complexity of the situation. *See* Comp. ¶ 15.

The remaining 10% of Plaintiff's time when she was worked in HR was devoted to performance actions (satisfactory and unsatisfactory performance reviews) and providing training in Fact Finding investigations and other employee relations and labor relations matters. *See* Comp. ¶ 16. Furthermore, while Plaintiff was working in HR/Labor Relations, she was a licensed attorney and served as first and/or second chair representing the VA in Arbitrations. *See* Comp. ¶ 17. In that role, Plaintiff routinely gathered and reviewed, evidence and strategized with OGC on discovery responses in support of litigation. *See* Comp. ¶ 18. Plaintiff was also responsible for

labor relations programs, including management of requests for information, grievance processing, responding to, investigating and litigating unfair labor practices, and drafting notice of opportunities memoranda. Plaintiff also wrote and prepared VA personal actions (removals, suspensions, disciplinary actions). *See* Comp. ¶ 19. *See also* EXHIBIT 1, ¶¶ 16-17.

For the last three years of her tenure in HR, Plaintiff was a licensed attorney, having completed night courses at City University of New York. *See* Comp. ¶¶ 14-19. During that time, she repeatedly and consistently applied her legal reasoning, research and writing skills, and technical knowledge of the law to her tasks, as described in EXHIBIT 1, ¶¶ 16-17. Furthermore, the job description for her position in HR makes clear that her work was very similar to the work she later did in OGC. *See* EXHIBIT 3. Plaintiff's sworn declaration makes clear that at a minimum, the Agency should have reviewed and considered her for service credit that would have avoided the need for a probationary period.

Plaintiff joined the OGC in May of 2024. Because her work in OGC was so similar to the work she had been doing in the HR department, she did not have a steep learning curve in her new position. *See* EXHIBIT 1, ¶¶ 18-20. She was able to hit the ground running, and started to receive positive feedback about her efforts very early on in her tenure. *See* EXHIBITS 2-4 to Comp . Plaintiff's strong performance continued throughout the evaluation period, until she received her first annual performance in OGC. *See* EXHIBIT 4 to Comp. On that evaluation, which was dated November 24, 2024, Plaintiff was rated as "exceptional" in five of six categories, and fully satisfactory in the remaining category. *See id*. She was also awarded a bonus for her strong performance. *See* Comp. ¶ 28.

Just a few weeks later, in February of 2025, while perusing her work email, Plaintiff received a letter from the Agency informing her that she was being terminated pursuant to 5

C.F.R.§315.803 & 804, which cover terminations of employees for poor performance or poor conduct. *See* EXHIBIT 5 to Comp. Specifically, the letter stated: "The Agency finds, based on your performance, that you have not demonstrated that your further employment at the Agency would be in the public interest." *See id.* Not only was Plaintiff completely caught off guard by this action, but so too was her immediate supervisor who was not contacted or consulted about the Agency's view of Plaintiff's performance. *See id. See also* Comp. ¶¶ 37-41. Plaintiff reached out to her managers to ascertain if there was anything that could be done to help her, and they both expressed their sincere regret that Plaintiff had been terminated, and that it was not their intention for that to have occurred. *See id*.

## STANDARD OF REVIEW

A plaintiff seeking a preliminary injunction must establish (1) a likelihood of success on the merits, (2) a likelihood of suffering irreparable harm in the absence of preliminary relief, (3) that the balance of equities tips in the plaintiff's favor, and (4) that an injunction is in the public interest.'" *Sherley v. Sebelius*, 644 F.3d 388, 392 (D.C. Cir. 2011) (quoting *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008)). Plaintiffs satisfies all four factors required for seeking a preliminary injunction.

The first factor is "[a] foundational requirement for obtaining preliminary injunctive relief." *Guedes v. Bur. of Alcohol, Tobacco, Firearms and Explosives*, 920 F.3d 1, 10 (D.C. Cir. 2019); *see also Aamer v. Obama*, 742 F.3d 1023, 1038 (D.C. Cir. 2014) (highlighting first factor as the "most important factor"); *Zeynali v. Blinken*, 630 F. Supp. 3d 208, 212 (D.D.C. 2022).

Importantly, courts in this jurisdiction evaluate the four preliminary injunction factors on a "sliding scale"—if a "movant makes an unusually strong showing on one of the factors, then it does not necessarily have to make as strong a showing on another factor." *See Agua Caliente Band*

*of Cahuilla Indians v. Mnuchin*, No. 20-cv-01136 (APM), at \*5-6 (D.D.C. May 11, 2020) (citing *Davis v. Pension Benefit Guar. Corp*, 571 F.3d 1288, 1291-92 (D.C. Cir. 2009). Though some courts have reasoned that the Supreme Court's decision in *Winter v. Natural Resources Defense Council* cast some doubt on this approach, *see Davis*, 571 F.3d at 1296 (Kavanaugh, J., concurring) ("[T]he old sliding-scale approach to preliminary injunctions—under which a very strong likelihood of success could make up for a failure to show a likelihood of irreparable harm, or vice versa—is no longer controlling, or even viable." (internal quotation marks and citation omitted)), the D.C. Circuit has yet to actually adopt that position.

Therefore, absent a D.C. Circuit or Supreme Court decision overruling it, the sliding scale framework remains binding precedent that this court must follow. *See Archdiocese of Wash. v. Wash. Metro. Area Transit Auth.*, 897 F.3d 314, 334 (D.C. Cir. 2018) (explaining that the D.C. Circuit "has not yet decided whether *Winter* . . . is properly read to suggest a 'sliding scale' approach to weighing the four factors be abandoned"); *United States v. Torres*, 115 F. 3d 1033, 1036 (D.C. Cir. 1997) ("[D]istrict judges, like panels of [the D.C. Circuit], are obligated to follow controlling circuit precedent until either [the D.C. Circuit], sitting *en banc*, or the Supreme Court, overrule it.").

## **ARGUMENT**

### I.     PLAINTIFF HAS A STRONG LIKELIHOOD OF SUCCESS ON THE MERITS

As stated above, if Plaintiff has a particularly strong showing of a likelihood of success on the merits, such can somewhat mitigate the degree of irreparable harm she is required to demonstrate. For the reasons discussed below, Plaintiff is very likely to succeed on the merits.

A.    **The Administrative Procedures Act Gives This Court the Authority to Review Agency Decisions**

As an initial matter, Plaintiff brings this action pursuant to the Administrative Procedures Act (hereinafter "APA") 5 U.S.C. § 706, alleging that the decisions of the VA with respect to her continued employment were arbitrary, capricious, without basis in fact, and manifestly unfair. The APA provides that a reviewing court shall set aside any agency action that is arbitrary and capricious. *See id.* "The decision whether to vacate depends on the seriousness of the order's deficiency . . . and the disruptive consequences of an interim change that may itself be changed." *Allied-Signal, Inc. v. U.S. Nuclear Regulatory Comm'n,* 988 F.2d 146, 150-51 (D.C. Cir. 1993); *see also, e.g., Advocates for Highway and Auto Safety,* 429 F.3d 1136, 115 (D.C. Cir. 2005); *Ill. Pub. Telecomm. Ass'n v. FCC,* 123 F.3d 693, 693 (D.C. Cir. 1997); *Association of Battery Recyclers, Inc. v. EPA,* 208 F.3d 1047, 1061 (D.C. Cir. 2000); *American Bioscience, Inc. v. Thompson,* 269 F.3d 1077, 1084 (D.C. Cir. 2001); *Sierra Club v. Van Antwerp*, 719 F. Supp. 2d 77, 78 (D.D.C. 2010).

An agency action must be set aside if the action was `arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law. *See Fed. Commc'ns Comm'n v. Nextwave Personal Commc'ns. Inc.,* 537 U.S. 293, 300 (2003) '"); *Sierra Club v. Van Antwerp*, 719 F. Supp. at 78. In reviewing an agency's action, the court must engage in a "thorough, probing, in-depth review" to determine "whether the decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment." *Citizens to Preserve Overton Park v. Volpe*, 401 U.S. 402, 415-16 (1971). However, while the Court's inquiry must be "searching and careful," the standard of review is also a highly deferential one; the agency's actions are "entitled to a presumption of regularity," and the court cannot "substitute its judgment for that of the

agency." *Id.* at 415-16.  *See also Fund for Animals v. Norton*, 294 F. Supp. 2d 92, 22 (D.D.C. 2003).

In *Bartman v. Cheney*, 827 F. Supp. 1 (D.D.C. 1993), the District Court specifically took up the issue of whether or not an employee of the Department of Defense could sue under the Administrative Procedures Act alleging a violation of his Constitutional due process rights, and the Court concluded that he could.  That holding is instructive here, particularly because Plaintiff has no remedies at the MSPB.

5 C.F.R. §315.804 permits the termination of probationary employees for poor performance or for poor conduct.  §315.806 outlines the appeal rights of probationary employees, and specifically limits those appeals to allegations that the termination was due to marital status or was for partisan political reasons (*see* §315.806(b)), was improperly based on something that occurred prior to employment (*see* §315.806(c)), or was discriminatory based on a statutorily protected category (*see* §315. 806(d)).  The claim herein does not fit into any of those categories; thus Plaintiff is not entitled to an appeal at the MSPB. Plaintiff raises her claims in this Court because she asserts a violation of her constitutional rights, and because this Court has authority to review the actions of the Agency, even if those actions were taken against her.

**B.**  **Plaintiff's Due Process Rights Were Violated When the Agency Failed to Carefully Consider her Entitlement to Service Credit for her Years of Work in Human Resources**

5 C.F.R. §315.802 outlines the circumstances in which an employee is to be given credit for their previous employment when entering a new job that would otherwise be subject to a probationary period.  Specifically, an employee is entitled to service credit if she: a) was employed with the same agency; b) was in the same line of work as determined by the employee's actual

duties and responsibilities; and c) her previous agency employment contained no more than a single break in service that did not exceed thirty (30) days.

Plaintiff meets all of these criteria. As stated in the Complaint, Plaintiff was employed with the VA continuously from 2006 to the date of her termination. *See* Comp. ¶¶ 10-13. As explained in paragraph 1 of EXHIBIT 1, Plaintiff has never had a break in service, let alone one in excess of thirty (30) days. The key question is whether or not Plaintiff's work in the Human Resources department was "the same line of work." As explained in EXHIBIT 1, it was. *See* EXHIBIT 1 ¶¶ 15-17. Plaintiff's Complaint, and her declaration attached at EXHIBIT 1 makes clear that the Agency was benefiting from Plaintiff's legal expertise and HR experience long before she became a part of OGC. For approximately three years, Plaintiff was actively putting her law degree to work on Defendant's behalf. *See* EXHIBIT 1 ¶ 16.

Defendant's decision not to give Plaintiff credit for her previous service makes no sense, given the fact that at the same time, Defendant was using Plaintiff's experience and expertise to justify hiring her at the GS-14 level. *See* Comp. ¶ 22-24; EXHIBIT 1 ¶¶ 18-20. As explained in EXHIBIT 1, and further corroborated in EXHIBIT 4 to the Complaint, Plaintiff's previous work warranted being treated as a seasoned attorney with applicable and relevant skills. Even Defendant's own policy establishes that she should not have been given the GS-14 rank unless her previous work was similar. *See* EXHIBIT 4. A comparison between Plaintiff's job description in HR at EXHIBIT 3, and the GS-14 guidelines at EXHIBIT 4 makes clear that denying Plaintiff credit for her previous HR service was an error.

At the time that she was hired into OGC, Plaintiff had no reason to dispute being placed into a probationary status because she had had exemplary performance reviews, and had no reason to believe that her managers would act in bad faith accusing her of poor performance. Put another

way, top performers do not fear having to prove themselves.  Being a probationary employee would not have been a problem had her direct supervisors had a chance to offer their opinions about her performance before she was summarily terminated.  As stated in the Complaint, Plaintiff's supervisors had no idea that she was going to be fired, and therefore had no opportunity to examine or entertain the possibility that she should have been given credit for her prior service.  *See* Comp. ¶¶ 39-40.

Plaintiff asserts that the denial of service credit was not well thought out by the Agency, and that she was denied due process by that failure.  At a minimum, the Court should vacate Plaintiff's termination, and remand to the Agency to make specific findings on whether or not Plaintiff should have been given service credit, thus avoiding a probationary period.

### C.    Plaintiff's Due Process Rights Were Also Violated When Defendant Terminated her Employment in Conjunction with Defaming her

In EXHIBIT 5 to the Complaint, Defendant stated that the regulatory basis for Plaintiff's termination was 5 C.F.R.§§315.803 & 804.  Those provisions only permit termination of probationary employees for "unsatisfactory performance or conduct."  *See* 5 C.F.R. §315.804. Section 803 requires that the probationary period be used "as fully as possible" to determine the fitness of the employee.  *See* 5 C.F.R. §315.803 (a).  During her probationary period, Plaintiff received nothing but positive feedback and evaluation about her work.  *See* Comp. ¶¶ 26-29, and EXHIBITS 3 & 4 to the Comp.  Plaintiff was even given a bonus for her strong performance in her last evaluation.  *See* EXHIBIT 4 to the Comp., and Comp. ¶¶ 28-29.

There is simply no factual basis whatsoever that the Agency even talked to Plaintiff's supervisors about her performance before determining that her performance was unsatisfactory.  5 C.F.R. §804 requires that the termination notice must explain why the employee is being terminated, and actually state the basis for the agency's conclusion as to Plaintiff's inadequacies

in her performance or conduct.  That did not happen in this case.  Plaintiff's termination letter states that: "The Agency finds, based on your performance, that you have not demonstrated that your further employment at the Agency would be in the public interest."  This summation is wholly inadequate to meet the basic tenets of due process.  There is no rule or regulation anywhere that requires federal employees to demonstrate that their employment is in the "public interest."

It is Congress, and to a fair degree the Cabinet Secretaries, who establish what tasks and activities of their agencies are in the "public interest," not employees.  Plaintiff's obligation was to execute the tasks she was given by her superiors to the best of her capacity, which is what she did.  She received nothing but positive feedback from her superiors with respect to her efforts.  The Agency's termination of her employment based on a failure to make some policy showing about the importance of her role is absurd.

It is also outside the bounds of 5 C.F.R. §315.804.  That provision only allows for termination of probationary employees if their own performance and conduct was "inadequate," or "unsatisfactory," which is not the same thing as unnecessary or unjustified.  Put simply, Plaintiff's actual performance, as documented and evidenced in the records before the Court, was not only satisfactory, it was exceptional.

The Court must therefore turn its attention to whether or not a termination of employment based on patently false or conjured premises violates a federal employee's due process rights.  Plaintiff asserts that it does.  *See Langeman v. Garland*, 88 F.4th 289, 296 (D.C. Cir. 2023) ("We have previously "recognized the possibility of an action for deprivation of a liberty interest without due process where an employee is terminated.") (citing *McCormick v. District of Columbia*, 752 F.3d 980, 987 (D.C. Cir. 2014)).  Courts have recognized two theories of recovery: "reputation-plus" and "stigma or disability." *O'Donnell v. Barry*, 148 F.3d 1126, 1140 (D.C. Cir. 1998).

In the Complaint, Plaintiff alleges that her substantive due process rights were violated under the "reputation plus" theory. A "reputation-plus" claim requires a plaintiff to identify an act of defamation made in "conjunction" with an adverse employment action. *O'Donnell*, 148 F.3d at 1140. ("[O]nly defamation that is '*accompanied* by a discharge from government employment…' is actionable.") (quoting *Mosrie v. Barry*, 718 F.2d 1151, 1161 (D.C. Cir. 1983)). A reputation-plus claim "rests on the fact that official criticism will carry much more weight if the person criticized is at the same time demoted or fired:

> For a defamation to give rise to a right to procedural due process, it is necessary — we need not say when it is sufficient — that the defamation be accompanied by a discharge from government employment or at least a demotion in rank and pay. The latter, more general category requires that the government either have formally deprived one of a legal right, such as the right to purchase liquor or to drive, or have so severely impaired one's ability to take advantage of a legal right, such as a right to be considered for government contracts or employment or a right to seek non-government employment, that the government can be said to have "foreclosed" one's ability to take advantage of it and thus extinguished the right.

*Mosrie v. Barry*, 718 F.2d at 1161. *See also O'Donnell v. Barry*, 148 F.3d at 1140.

Such is clearly the case here. Not only was Plaintiff summarily terminated, but she was terminated under the auspices of poor or inadequate performance. The characterization of Plaintiff's performance as poor or inadequate is particularly harmful to Plaintiff because this was her first job as a practicing attorney. It was her first opportunity to be evaluated solely on her legal acumen, rather than her ability to apply legal reasoning to HR functions.

Plaintiff is not a young entrant to the employment market, and already has to fight the stigmas associated with hiring older workers. *See* EXHIBIT 1, ¶¶ 1, 3, 25-27. The fact that she now has to admit that she was terminated ostensibly for poor performance less than a year into her first job as an attorney is extremely detrimental to her reputation as a competent attorney. Defendant's callous and unjustified actions have severely impaired Plaintiff's ability to obtain employment on

the open market, and have essentially foreclosed her ability to be employed by the federal government, all without justification of any kind. *See generally, Conset Corp. v. Community Services Administration,* 655 F.2d 1291 (D.C. Cir. 1981) (finding a due process violation when determination letter from agency foreclosed ability of plaintiff to obtain government contracts).

A procedural due process violation occurs when state action deprives a person of her life, liberty, or property interests without due process of law. *See Zinermon v. Burch,* 494 U.S. 113, (1990) (citing *Carey v. Piphus,* 435 U.S. 247, 259 (1978)). In order to have a property interest in a benefit, a person clearly must have more than an abstract need or desire' and 'more than a unilateral expectation of it. She must, instead, have a legitimate claim of entitlement to it.'" *Town of Castle Rock v. Gonzales,* 545 U.S. 748, 756 (2005) (quoting *Bd. Of Regents of State Colleges v. Roth,* 408 U.S. 564, 577 (1972)); *Steinberg v. Gray,* 815 F. Supp. 2d 293, 301 (D.D.C. 2011).

As for Plaintiff's procedural rights, Plaintiff admits that probationary employees are not typically offered due process such as a pre-termination hearing. However, even a probationary employee is entitled to be told what specific performance or conduct deficiency necessitated her termination. *See* 5 C.F.R. §315.804. Defendant's failure to do even that, calls into play the *Accardi* doctrine, which holds that "an agency must comply with its own regulations in effecting the removal of one of its employees." *See United States ex rel. Accardi v. Shaughnessy*, 347 U.S. 260 (1954). *See also Vanover v. Hantman*, 77 F. Supp. 2d 91, (D.D.C. 1999), *aff'd,* 38 F. App'x 4 (D.C. Cir. 2002) (citing *Holden v. Finch*, 446 F.2d 1311, 1315 (D.C. Cir. 1971) (It is well-established under the *Accardi* doctrine that an agency must comply with its own regulations in effecting the removal of one of its employees.); *Fausto v. Gearan*, No. Civ. A. 93-1863, 1997 WL 540809, *11 (D.D.C. Aug. 21, 1997); *see also Padula v. Webster*, 822 F.2d 97, 99-100 (applying *Accardi* to hiring decision); *Mass. Fair Share v. Law Enforcement Assistance*

*Admin.*, 758 F.2d 708, 711 (D.C. Cir. 1985) (holding that agencies must follow procedures "by which the interests of others are to be regulated").

While it may be true that courts will not void the result of the proceeding if the error was harmless (or equivalently, `non-prejudicial')." *Id.* (citing *Mazaleski v. Treusdell*, 562 F.2d 701, 719 (D.C. Cir. 1977)), it can hardly be argued in this case that the Agency's failure to articulate a single example of poor performance or poor conduct to which Plaintiff could respond was "harmless." Indeed, the recent decision in *United States Office of the Special Counsel, ex rel Former Employee [redacted] v. Department of Veterans Affairs*, attached hereto as EXHIBIT 2 is particularly instructive and persuasive with respect to due process and regulatory violations by the Agency in its summary terminations of probationary personnel. In ultimately requesting that the MSPB enter a stay of 45-days on all terminations, the Special Counsel made the following findings:

> The Civil Service Reform Act ("CSRA") provides that individuals hired into the competitive service must serve a one-year probationary or trial period.[23] 5 C.F.R. § 315.801- 802. For these employees, the regulations promulgated by OPM state explicitly that agencies "*shall* utilize the probationary period as fully as possible *to determine the fitness of the employee* and shall terminate his or her services during this period if the employee fails to demonstrate fully his or her qualifications for continued employment." 5 C.F.R. § 315.803 (emphasis added). In short, to terminate a probationary employee, an agency "must honestly be dissatisfied with the probationer's conduct or performance after giving him a fair trial on the job." *McGuffin v. SSA*, 942 F.3d 1099, 1102 (Fed. Cir. 2019) (citing *Shaw v. United States*, 622 F.2d 520, 223 (Ct. Cl.1980); *see also Perlongo v. United States*, 215 Ct. Cl. 982, 983 (1977).

> Where an employee's "work performance or conduct during [his probationary] period fails to demonstrate his fitness or his qualifications for continued employment," an agency may terminate the employee by notifying him "in writing as to why he is being separated and the effective date of the action." 5 C.F.R. § 315.804(a). This notice "shall, as a minimum, consist of the agency's conclusions as to the inadequacies of his performance or conduct." *Id.*

> Probationary employees have only limited rights to challenge personnel actions taken against them. 5 C.F.R. § 315.806. However, while the threshold for

terminating a probationary employee is significantly lower than for a tenured employee, it is not zero – probationary employees cannot be terminated "at will." Agencies must inform probationary employees of the specific reasons for their termination, which necessarily requires agencies to conduct an individualized assessment of their performance and conduct. This requirement is not a simple bureaucratic technicality – compelling agencies to assess the specific fitness of each employee prior to terminating them ensures that outstanding employees are not arbitrarily lost and that terminations are truly in the best interests of the federal service and consistent with merit system principles. For these reasons, terminating probationary employees in the competitive service for reasons other than their individual fitness for federal employment violates 5 C.F.R. § 315.801 *et seq.*

The Office of the Special Counsel is uniquely positioned to make such a determination, and while this is not binding on this Court, it should be very persuasive.

In sum, in conjunction with Plaintiff's Sworn Declaration, the Complaint, on its face asserts not only viable claims, but claims with a high likelihood of success on the merits. Not only is this sufficient to carry Plaintiff's burden on the first element of the preliminary injunction standard, but it should weigh sufficiently in the Court's sliding-scale analysis to grant the relief requested.

## II.    WITHOUT THE COURT'S INTERCESSION, PLAINTIFF WILL SUFFER IRREPARABLE HARM

Courts have found that reputational damage can constituted irreparable harm. *See Jericho Baptist Church Ministries, Inc. v. Jericho Baptist Ministries, Inc.*, Civil No. 16-cv-00647 (APM), at *5 (D.D.C. Aug. 25, 2016) ("[i]t is well-settled that "reputational injury can be used to establish irreparable harm in certain circumstances.") (citing *Trudeau v. FTC*, 384 F. Supp. 2d 281, 297 (D.D.C. 2005) (citations omitted); 11A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Fed. Prac. & Proc. § 2948.1 (3d ed.) ("Injury to reputation or goodwill is not easily measurable in monetary terms, and so often is viewed as irreparable.").

In this instance, Plaintiff specifically alleges that Defendant's actions will cause her the type of stigma that ruin her significantly impact her ability to obtain future employment. This

concept was explored by the court in *Campbell v. District of Columbia*, 126 F. Supp. 3d 141, 153

(D.D.C. 2015). In that case, the court explained that:

> In contrast to the "reputation-plus" theory, the "stigma or disability" theory hinges
> not on "official *speech*, but on a continuing stigma or disability arising from
> official *action*." Such "stigma or disability" results when state action has the
> "broad effect of largely precluding [the employee] from pursuing her chosen
> career." The official action must have "the effect of seriously affecting, if not
> destroying a plaintiff's ability to pursue his chosen profession, or substantially
> reducing the value of his human capital."

*Id.* (internal quotation marks, alterations, and citations omitted) (citing *O'Donnell v. Barry*, 148

F.3d 1126 (D.C. Cir. 1998)). *See also Taylor v. Resolution Trust Corp., 56 F.3d 1497, 1506-07*

(D.C. Cir. 1995).

Plaintiff's declaration outlines how the stigma of being fired from her first job as a lawyer

will follow her, and how it will further burden her in a job search. *See* EXHIBIT 1 ¶¶ 25-29.

Plaintiff notes that as a woman over 50 years of age, and with a disability, she is already challenged

in finding permanent employment. *See id.* at ¶¶ 3, 27. The stigma of having been fired for poor

performance, when such was plainly not the case, will not only burden her ability to find gainful

employment, it will also be something she will have to reveal if she seeks to join the bar of another

state, or to seek any job that requires a background check.

No amount of money will fix the damage done to Plaintiff's good name and reputation.

That is why she asks this Court to intercede and force the Agency to rescind a termination that was

both unlawful and defamatory in nature. As held in *Kartseva v. Department of State*, 37 F.3d 1524

(D.C. Cir. 1994):

> Government action that has the effect of "seriously affect[ing], if not destroy[ing]"
> a plaintiff's ability to pursue his chosen profession, or "substantially reduc[ing] the
> value of his human capital," thus infringes a liberty interest.

*Id.* (internal citations omitted) (quoting *Greene v. McElroy*, 360 U.S. 474, 492 (1959)). *See also Taylor v. Resolution Trust Corp.*, 56 F.3d 1497, 1506 (D.C. Cir. 1995). While the stigma-plus analysis applies to ascertaining whether the plaintiff has a justiciable due process right, it stands to reason that if a person has a constitutional right not to be incumbered by government action that creates that sort of stigma, such a stigma would also constitute an irreparable harm.

### III. THE BALANCE OF EQUITIES CLEARLY LEAN IN PLAINTIFF'S FAVOR

Weighing the equities traditionally consists of an examination of three of the requirements for obtaining injunctive relief: the harm to the plaintiff if an injunction is not granted, the harm to others from the issuance of an injunction, and the public interest. In any suit for injunctive relief the balance of hardships may be tipped by the strength of the plaintiff's showing of a likelihood of success on the merits. *See Federal Trade Com'n v. Weyerhaeuser Co.*, 665 F.2d 1072, 1093 (D.C. Cir. 1981). As noted above, Plaintiff has a very strong likelihood of success on the merits, most especially because of the OSC finding that terminations identical to the termination of Plaintiff constituted prohibited personnel actions.

The record before the Court makes plain, and there will be no countervailing evidence, that Plaintiff was a very strong performer, and whatever reason Defendant had for terminating her employment, it was not due to her performance or conduct. Rather, it appears that Defendant attempted to achieve a partisan political goal by circumventing applicable regulations related to reductions in force at federal agencies. Rather than engaging in a thoughtful and careful RIF process, Defendant fabricated lies about Plaintiff (and many other employees), to justify abrupt, unwarranted and unlawful actions.

Thus the scales of equity do not just tip in Plaintiff's favor, they load only to one side, because there is no cognizable argument for a legitimate interest on the other side. Agency

decisions are entitled to deference from the courts when an agency acts in concert with its own regulations and guidelines. That is not the case when the agency action is utterly devoid of any factual or legitimate basis. Such actions meet the definition of "arbitrary and capricious." In general, an agency decision will be considered arbitrary and capricious if:

> the agency has [1] relied on factors which Congress has not intended it to consider, [2] entirely failed to consider an important aspect of the problem, [3] ***offered an explanation for its decision that runs counter to the evidence before the agency***, or [4] is so implausible that it could not be ascribed to a difference in view or the product of agency expertise. Simply put, "the agency must explain why it decided to act as it did," and the reason for the agency's decision must be "both rational and consistent with the authority delegated to it by Congress,"

*Cayuga Nation v. United States*, 594 F. Supp. 3d 64, 72 (D.D.C. 2022) (citing *Butte Cnty. v. Hogen*, 613 F.3d 190, 194 (D.C. Cir. 2010), and *Xcel Energy Servs. Inc. v. FERC*, 815 F.3d 947, 952 (D.C. Cir. 2016)) (emphasis added).

In this case, the decision to terminate Plaintiff, ostensibly for poor performance, is completely belied by the evidence of her exemplary performance. Therefore, the agency decision to terminate her is entitled to no deference whatsoever, and in such instance, the interest of Defendant must yield to the interest of Plaintiff in both her continued employment, and in her good name and positive professional reputation.

IV. THE PUBLIC INTEREST LIES IN HOLDING DEFENDANT TO THE RULE OF LAW, AND IN ENSURING THAT VA FUNCTIONS ARE NOT DISTRUBED

In evaluating whether or not to issue an injunction, courts have consistently held that there is a strong public interest in enforcing and upholding the rule of law. *See Ohio Head Start Ass'n, Inc. v. U.S. Dep't of Health & Human Servs.*, 902 F. Supp. 2d 61, 71 (D.D.C. 2012) ("The public has a vested interest in ensuring that Federal Agencies enforce laws enacted by Congress."). One court explained that:

> Public interest also lies in appropriate and reasoned enforcement of federal statutes. The public interest is not served to the extent [the agency] acted on the erroneous belief that it had the power and authority to level the marketplace among competitors. The public interest also is not served when the record fails to demonstrate some reasoned basis for an agency's enforcement position.

*Nalco Co. v. United States Envtl. Prot. Agency*, 786 F. Supp. 2d 177, 189 (D.D.C. 2011).  See also

*12 Percent Logistics, Inc. v. Unified Carrier Registration Plan Bd.*, No. 17-cv-02000 (APM), at

*27 (D.D.C. Feb. 4, 2019) ("[t]he public interest plainly favors injunctive relief.") (citing

*Cent. United Life, Inc. v. Burwell*, 128 F. Supp. 3d 321, 330 (D.D.C. 2015) ("Forcing federal

agencies to comply with the law is undoubtedly in the public interest[.]").

In this instance, the public is not served by the Agency essentially defaming Plaintiff, and

many other VA employees, by fabricating a justification for their summary termination.  The

public is best served when agencies act with deference to the law, treat their employees with

fairness and equity, and abide by the regulations that constrain them.

Moreover, it cannot be disputed that VA employees serve an important mission in

providing services to the people who sacrifice to protect this nation.  The Agency's haphazard and

unjustified actions have caused massive confusion and harm to the people tasked with serving our

veterans.  Defendant's actions were not well thought out, and were done to achieve a purely

partisan political end that has nothing to do with achieving the mission of the VA that was

contemplated, legislated and appropriated by Congress.

If there is indeed a need to reduce headcount at the Agency (which Plaintiff in no way

concedes), Congress set out a regulatory scheme to achieve that end.  That scheme does not involve

lying about the performance of dedicated federal workers to justify their summary termination.

That approach has caused chaos at the Agency, and has damaged, rather than advanced its work,

purpose and image.  In short, there is no public interest in permitting illogical and unlawful Agency

actions to go unchallenged.  For these reasons, the public interest lies squarely with the issuance of injunctive relief.

## CONCLUSION

Plaintiff comes to this Court asking for its intercession to block a manifest injustice that will have irreparable, deep and long-lasting impacts on her employment and future career.  While the Agency is normally entitled to deference in the execution of its discretion, such deference is wholly inappropriate here.  The directive to terminate Plaintiff did not come from the managers and supervisors with actual knowledge of her performance.  It came as the result of a partisan political move, without any consideration of the regulatory parameters applicable even to probationary employees.  Plaintiff, herein, fully supports the fact that she should not have been a probationary employee, and that the Agency fundamentally erred in failing to give her service credit for her time in the Human Resources function.  But even if she was properly placed in that category, her termination for poor performance was utterly unjustified, and was both defamatory and unlawful.  Plaintiff has properly identified legitimate liberty interests that were incumbered without justification, thus depriving Plaintiff of constitutional due process rights.

Plaintiff has also established that the merits lie with her in all four components of the injunctive relief analysis, and thus that she is entitled to immediate relief from this Court to: a) reinstate her employment with the VA; b) order the Agency to reassess whether Plaintiff should have received credit for her service in HR; and c) void and rescind the letter issued to Plaintiff alleging or implying that her performance was sufficiently poor to warrant termination.  Plaintiff's motion is sound, well grounded in the law, and sufficiently supported by the record before the Court.  It therefore should be GRANTED.

Respectfully submitted

/s/Pamela M. Keith
Pamela M. Keith [Bar. No. 448421]
CENTER FOR EMPLOYMENT JUSTICE
650 Massachusetts Ave. NW
Suite 600
Washington, DC 20001
Tel: (202) 800-0292
Fax: (202) 807-5725
pamkeith@centerforemploymentjustice.com
*Counsel for Plaintiff*

## CERTIFICATION PURSTUANT TO RULE 7(m)

Because no attorney has been assigned by Defendant to this case yet, Plaintiff was unable to obtain Defendant's position on this Motion, and thus Plaintiff represents to the Court that the Motion is opposed.

## CERTIFICATE OF SERVICE

This is to certify that on February 28, 2025, the foregoing Motion for a Preliminary Injunction and Memorandum of Law in support thereof, was served by in-person service of process on:

Executive Office for the United
States Attorney
Civil Process Clerk
601 D St. NW
Room 2242
Washington, DC 20530-0001

United States Department of Justice
950 Pennsylvania Avenue NW
Washington, DC 20530-0001

Department of Veterans' Affairs
Office of the General Counsel
810 Vermont Avenue, NW
Washington, DC 20420

/s/*Pamela M. Keith*
Pamela M. Keith

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

GAIL SCHECHTER,          )
                           )
      *Plaintiff*,       )    Case No, 1:25-CV-00551-RC
                           )
v.                       )
                           )
DOUGLAS COLLINS,         )
                           )
      *Defendant*.     )
_____)

**PROPOSED ORDER**

Whereas, Plaintiff has moved this Court for Preliminary Injunctive Relief; and

Whereas, the Court has considered Plaintiff's Motion and Memorandum of Law in Support thereof, Defendant's Opposition and the entire record in this matter, and

Whereas, this Court finds that Plaintiff has met her burden in establishing her entitlement to injunctive relief,

The Court hereby ORDERS Defendant to immediately reinstate Plaintiff to her employment as an attorney in the VA Office of General Counsel.

The Court also voids the termination letter that was issued on February 13, 2025, and remands the matter to the Agency to fully consider whether Plaintiff should have been given service credit for her tenure in the HR function, and to further consider whether she should be terminated in light of this Court's ruling, and in consideration of the findings of the Office of Special Counsel outlined in Plaintiff's Memorandum of Law.

So ORDERED,

_____

Date

_____

Judge Rudolph Contreras

Copies to:

     Attorneys of Record