UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| GAIL SCHECHTER,<br><br>　　　　　Plaintiff,<br><br>　v.<br><br>DOUGLAS COLLINS,<br>Secretary of Veterans Affairs,<br><br>　　　　　Defendant. | Civil Action No. 25-0551 (RC) |

**DEFENDANT'S OPPOSITION TO PLAINTIFF'S
MOTION FOR A PRELIMINARY INJUNCTION**

1

Defendant the Secretary of Veterans Affairs respectfully files this opposition to Plaintiff Gail Schechter's motion for preliminary injunction (ECF No. 3, "Pl. Mot."). For the reasons discussed below, the Court should deny Plaintiff's motion.

## INTRODUCTION

Plaintiff, a recently terminated probationary employee, claims she should not have been labeled probationary at the time of her termination and her termination violated the Administrative Procedure Act ("APA") and her due process rights under the Fifth Amendment. Specifically, she brings (1) a substantive due process claim; (2) a procedural due process claim; (3) an APA claim contending the removal was arbitrary and capricious; and (4) a mandamus claim. She also asks the Court to enter a preliminary injunction on the theory that the Department's misclassification of her as a probationary employee in May 2024 that led to her termination in February 2025 is causing her irreparable harm. Plaintiff's preliminary injunction request should be denied on multiple grounds.

To begin, Plaintiff fails to establish a likelihood of success on the merits of her claims. Plaintiff was a federal employee and alleges errors in her probationary classification process that she believes led to her termination. But judicial review of her claims is foreclosed by the comprehensive administrative review scheme sets forth in the Civil Service Reform Act ("CSRA").

Also, Plaintiff fails to establish irreparable harm absent the temporary relief she seeks. Her alleged harms are not legally cognizable in the first instance; she has no property interest in the employment at issue. What is more, any actual or potential harm due to her from loss of employment is remediable following the conclusion of litigation in the appropriate forum, should she prevail, and thus cannot constitute irreparable harm.

Likewise, the balance of equities and the public interest favor the Department, as Plaintiff's requested Preliminary Injunction would interfere with the Department's ability to manage its workforce. The Court should accordingly deny her motion.

## BACKGROUND

Plaintiff was employed at the Department of Veterans Affairs ("Department") as a Supervisory Dietician from 2006 to 2021. *See* Compl. (ECF No. 1) ¶¶ 9, 10. In September 2021, Plaintiff joined the Department's human resources division and was later promoted to a supervisory position in May 2022. In June 2023, Plaintiff accepted a lateral transfer to an executive human resources specialist role, which involved working directly with network level employees. *Id.* ¶ 13.

Plaintiff's duties within the human resources division included working on disciplinary actions and defending the agency in grievances, arbitrations, against Unfair Labor Practice charges, Federal Labor Relations Act claims, and other performance actions. *Id.* ¶ 15. Plaintiff was also responsible for labor relations programs, including managing requests for information, processing grievances, investigating and litigating unfair labor practices, and drafting notice of opportunities memoranda. *Id.* ¶ 18. Plaintiff also wrote and prepared the Department personnel actions (i.e., removals, suspensions, disciplinary actions). *Id.* In November 2023, Plaintiff was offered an Attorney Advisor position with the Department's Office of General Counsel, but that offer was rescinded due to a hiring freeze. *Id.* ¶ 21. In May 2024, Plaintiff was again offered that same attorney position and accepted it. *Id.* The human resources component of the Office of General Counsel qualified Plaintiff as a GS-14 attorney. *Id.* ¶ 24. The offer letter sent to Plaintiff indicated that the position was subject to a one-year probationary period. *Id.* ¶ 25; Email Chain With Offer (ECF No. 1-2 at 3). Plaintiff's probationary period was set to end on May 4, 2025.

On February 13, 2025, Plaintiff received an email on her work account, informing her that she was removed from the Department as a probationary employee, effective that same day. Email Chain (ECF No. 1-2 at 69-73). The termination email was specifically addressed to Plaintiff and did not include any other Department employee. *Id.* There is no indication the Department distributed the email to a third party.

Citing to the Merit Systems Protection Board Report to the President and Congress, the notice states in relevant part:

> Guidance from the Office of Personnel Management ("OPM") states, "An appointment is not final until the probationary period is over," and the probationary period is part of "the hiring process for employees." "A probationer is still an applicant for a finalized appointment to a particular position as well as to the Federal service." "Until the probationary period has been completed," a probationer has "the burden to demonstrate why it is in the public interest for the Government to finalize an appointment to the civil service for this particular individual."

*Id.* (ECF No. 1-2 at 70). The notice also states, "[t]he Agency finds, based on your performance, that you have not demonstrated that your further employment at the Agency would be in the public interest." *Id.* The notice has a "REFERENCES" heading, which lists various statutes and regulations, including "5 U.S.C. § 7511, 5 U.S.C. § 3321(a), 5 C.F.R. §§ 315.803 and 804." *Id.*

About fifteen minutes after receiving the email notice, Plaintiff forwarded it to her personal Gmail account. *Id.* (ECF No. 1-2 at 68). Eleven days later, on February 24, 2025, Plaintiff filed her Complaint this suit, claiming that she was entitled to credit for her years in the Department's human resources division and should not have been a probationary employee with the Office of General Counsel because she met all of the criteria set out in 5 C.F.R. § 315.802 to have been given credit for her service in human resources. *See generally* Compl. Plaintiff further alleges that the Department's refusal to give her such credit was arbitrary and capricious. *Id.* ¶ 35.

Further, the Complaint asserts the termination email contained false and defamatory information. *Id.* ¶ 36. Finally, the Complaint alleges Plaintiff was denied due process rights

3

regarding her termination, including the Department's failure (a) to inform her as to her specific performance deficiencies; and (b) to give her an opportunity to respond to any perceived deficiencies. *Id*. ¶ 37. Plaintiff alleges she is seeking new employment and has not received interest from any employer she has contacted since her termination notice. *Id.* ¶ 42. Plaintiff alleges that the fact that she was recently terminated is negatively impacting her ability to find new employment. *Id.*

## STANDARD OF REVIEW

A preliminary injunction "is an extraordinary remedy never awarded as of right." *Winter v. Nat. Res. Def. Council*, 555 U.S. 7, 24 (2008). A party seeking preliminary relief must make a "clear showing that four factors, taken together, warrant relief: likely success on the merits, likely irreparable harm in the absence of preliminary relief, a balance of the equities in its favor, and accord with the public interest." *League of Women Voters of the U.S. v. Newby*, 838 F.3d 1, 6 (D.C. Cir. 2016) (quoting *Pursuing Am.'s Greatness v. FEC*, 831 F.3d 500, 505 (D.C. Cir. 2016)). The moving party bears the burden of persuasion and must demonstrate, "by a clear showing," that the requested relief is warranted. *Hospitality Staffing Sols., LLC v. Reyes*, 736 F. Supp. 2d 192, 197 (D.D.C. 2010) (quoting *Chaplaincy of Full Gospel Churches v. England*, 454 F.3d 290, 297 (D.C. Cir. 2006)).

## ARGUMENT

I.  **Likelihood of Success on the Merits**

    A.  **Misclassification and Removal**

Plaintiff claims violations of the APA and due process rights under the Fifth Amendment when the Department allegedly misclassified her as a probationary employee, which ultimately led to her removal. *See* Pl. Mot. at 9-11. Plaintiff was well aware of her probationary status since May 2024, when she was offered the attorney position, yet she failed to raise any concerns

whatsoever until a week ago. Email Chain with Offer (ECF No. 1-2 at 3). Presently, she argues her work in the Department's human resources division was "the same line of work" performed by her as an Attorney Advisory in the General Counsel's Office and, therefore she should have been classified as a non-probationary employee when she attained the GS-14 attorney position. Pl. Mot. at 10. This claim fails as a matter because the CRSA's remedial scheme forecloses judicial review here.

The CSRA "regulates virtually every aspect of federal employment and 'prescribes in great detail the protections and remedies' applicable to adverse personnel actions, 'including the availability of administrative and judicial review.'" *Nyunt v. Chairman, Broad. Bd. of Governors*, 589 F.3d 445, 448 (D.C. Cir. 2009) (quoting *United States v. Fausto*, 484 U.S. 439, 443 (1988)). In general terms, for serious agency actions ("adverse actions"), the CSRA provides the right to file an action with the Merit Systems Protection Board (the "Board") and to appeal the decision to the Federal Circuit. *See* 5 U.S.C. § 7703(b)(1). For certain less serious actions ("prohibited personnel practices"), the CSRA requires an employee to seek redress from the Office of Special Counsel before filing a claim with the Board. *See* 5 U.S.C. § 2302(b). "A misclassification of a federal employment position is a 'prohibited personnel practice' as that term is defined in the CSRA." *Houlihan v. Off. of Pers. Mgmt.*, 909 F.2d 383, 384 (9th Cir. 1990).

Therefore, under the law, Plaintiff must invoke the remedial scheme of the CSRA, by first seeking review from the Office of Special Counsel before bringing her misclassification claims in court. *Hinkel v. England*, 349 F. 3d 162, 165 (3d Cir. 2003) ("Thus an employee contending a failure to implement his classification must bring his complaint to the Office of Special Counsel."); *see also Barnhart v. Devine*, 771 F.2d 1515, 1528 (D.C. Cir. 1985) (holding that federal employees must first exhaust administrative remedies before seeking mandamus review of adverse

5

classification decisions). Neither the Complaint nor Plaintiff's motion alleges that Plaintiff has followed the path laid out in the CSRA and exhausted administrative remedies. Therefore, the Court lacks jurisdiction over her misclassification claim. *Hornsby v. Thompson*, Civ. A. No. 22-1472 (RC), 2023 WL 196185, at *3 (D.D.C. Jan. 17, 2023) ("With respect to the CSRA, exhaustion of administrative remedies is a jurisdictional prerequisite to suit." (internal citation omitted)).

Next, Plaintiff asserts her misclassification relegated her to probationary status, which led to her termination. Pl. Mot. at 11-12. Like her misclassification claim, Plaintiff claims her removal violated the APA and her due process rights. *Id*. The comprehensive remedial scheme under the CSRA also forecloses her termination claim, even though she characterizes it as a constitutional violation.

In *Fausto*, 484 U.S. at 449, the Supreme Court elaborated on "the primacy of the [the Board] for administrative resolution of disputes over adverse personnel action" and "the primacy of the United States Court of Appeals for the Federal Circuit for judicial review." Thus, under the CSRA's "comprehensive and exclusive" remedial scheme, an employee may appeal a major adverse employment action, such as termination like in this case the Board. *See Turner v. U.S. Agency for Glob. Media*, 502 F. Supp. 3d 333, 363 (D.D.C. 2020). If the employee does not prevail before the Board, that employee may pursue judicial review of her claims in the Federal Circuit. *Id*. At base, the "CSRA bars any judicial review of adverse personnel actions by federal employees that are subject to its exclusive review mechanism." *Nurriddin v. Acosta*, 327 F. Supp. 3d 147, 161 (D.D.C. 2018). This "exclusivity does not turn on the constitutional nature of an employee's claim, but rather on the type of the employee and the challenged employment action." *Elgin v. Dep't of Treas.*, 567 U.S. 1, 15 (2012). Here, Ms. Schecter has not exhausted administrative remedies before

6

filing suit in federal court (and this Court would be an improper in any event absent allegations of discrimination, which are absent from Plaintiff's pleading). Accordingly, the Court lacks jurisdiction over claims relating to her removal.

### B. Plaintiff's Due Process Claims Fail.

Plaintiff's motion separately argues her termination was based on patently false information in violation of her due process rights. Pl. Mot. at 12. As noted above, these claims fail as the CSRA provides an exclusive remedial scheme to review federal personnel actions.

But even if the CSRA did not preclude Plaintiff's claims, they would also fail on the merits. For a due process claim, the Court must first consider whether a liberty or property interest is implicated. *Ky. Dep't of Corr. v. Thompson*, 490 U.S. 454, 460 (1989) (the plaintiff must show the Government deprived her of a "liberty or property interest" to which he had a "legitimate claim of entitlement," and that "the procedures attendant upon that deprivation were constitutionally [in]sufficient"). Here, Plaintiff's claims that that both her liberty and property interests were violated. Her property interest claims fails as she was a probationary employee at the time of her removal and she is not afforded the same due process protections as standard (non-probationary) federal employees. Her liberty interest claims will also likely fail as she cannot establish that she suffered harm to her reputation from the Department's termination. Plaintiff is wrong on both counts.

#### 1. Plaintiff Has No Property Interest as a Probationary Employee

To the extent Plaintiff argues that she has a property interest in her employment whether she is a probationary employee or not, Plaintiff is incorrect. As this Court has made clear, "an employee's status as a probationary employee poses a large hurdle to clear in order to establish a property interest." *Dave v. D.C. Metro. Police Dep't.*, 905 F. Supp. 2d 1, 9 (D.D.C. 2012) (citing *Piroglu v. Coleman*, 25 F.3d 1098, 1104 (D.C. Cir. 1994). This is due to the lack of protections

afforded non-permanent employees as "probationary employment is ordinarily considered employment at will." *Piroglu*, 25 F.3d at 1104. And "[t]hose who are terminable at will have no property interest because there is no objective basis for believing that they will continue to be employed indefinitely." *Hall*, 856 F.2d at 265. Further, limiting the rights afforded to probationary employees "was a conscious decision by Congress to afford federal managers great latitude in removing probationary employees before they became vested with the rights afforded tenured employees." *Bante v. Merit Sys. Prot. Bd.*, 966 F.2d 647, 650 (Fed. Cir. 1992). Therefore, if Plaintiff is viewed as a probationary employee, she plainly has no property interest and, correspondingly, no due process claim.

Although Plaintiff concedes that if she is viewed as a probationary employee, she does not enjoy the same procedural rights as non-probationary employees, she maintains she still has some procedural rights. Pl. Mot. at 14. In that vein, Plaintiff cites the *Accardi* doctrine to argue she is still "entitled to be told what specific performance or conduct deficiency necessitated her termination." *Id.* The *Accardi* doctrine permits judicial review under the APA of an agency action that would otherwise be unreviewable as committed to the agency's discretion, on the ground that the agency did not follow its own regulation in taking that action. *Petritfrere v. Austin*, Civ. A. No. 22-1819 (RCL), 2023 WL 5348748, at *3 (D.D.C. Aug. 21, 2023). This argument fails because again the CSRA's comprehensive and exclusive administrative remedial scheme dictates "[f]ederal employees may not circumvent the Act's requirements and limitations by resorting to the catchall APA to challenge agency employment actions." *Grosdidier v. Chairman, Broad. Bd. of Governors*, 167, 560 F.3d 495, 497 (2009).

          2.      To the Extent Plaintiff Believes She is Not a Probationary Employee, Any Due Process Claim is Precluded by the CSRA.

In any event, if Plaintiff contends she is not a probationary employee, as discussed above, the Court lacks jurisdiction over her termination claims as she has not availed herself to the CSRA's administrative remedial scheme. *Elgin*, 567 U.S. at 18 (explaining the CSRA makes the Board jurisdiction over an appeal dependent only on the nature of the employee and the employment action at issue.); *see also* 5 C.F.R. § 1201.3(a) (stating that "[t]he Board has jurisdiction over appeals from agency actions" and enumerating covered actions). Accordingly, because the Court does not have jurisdiction over Plaintiff's termination claims, she cannot establish the likelihood of success in this case.

    **C.**    **Plaintiff's "Reputation Plus" and "Stigma Plus" Theories Fail.**

Invoking the Fifth Amendment, Plaintiff also argues the termination impermissibly defamed or stigmatized her, to the detriment of her reputation and future career prospects, because it allegedly implied that she was terminated for poor performance. Pl. Mot. at 13-14, 16-17. Even were these claims to fall outside the CSRA's exclusive scheme, these claims fail under *Langeman v. Garland*, 88 F.4th 289 (D.C. Cir. 2023). Specifically, invoking the "reputation plus" and "stigma plus" theories of harm, Plaintiff asserts a Fifth Amendment claim for alleged harm to her reputation caused by the termination. Pl. Mot. at 13-14, 16-17. The D.C. Circuit's decision in *Langeman v. Garland*, 88 F.4th 289 (D.C. Cir. 2023), precludes these claims.

In *Langeman*, the FBI summarily terminated the employment of an FBI agent for "mishandling of charges of sexual abuse against [Larry] Nassar, who molested young gymnasts placed in [Nassar's] care." 88 F.4th at 292. The plaintiff there invoked the "reputation-plus" and "stigma or disability" theories to assert a Fifth Amendment claim. *Id*. at 296. The D.C. Circuit rejected both theories, holding that the FBI agent lacks a constitutionally protectable property

interest in his continued employment and cannot plead a deprivation of a liberty interest under a "reputation-plus" or "stigma or disability" theory in the absence of allegations that "the FBI actually revealed his identity in any defamatory public statement" and in the absence of any allegation of an adverse employment action. *Id*. The D.C. Circuit explained that "the fact that the media reported on [the FBI agent's] termination does not establish that [the government] made a 'public disclosure' of any defamatory statements." *Id*. The D.C. Circuit likewise rejected the "stigma or disability," which the Court explained it is "required that there be some statement of an attempt to obtain subsequent employment and a rejection for the job resulting from the alleged stigma or disability" and the FBI agent's "complaint is [] lacking in identifying in what ways [he] is broadly precluded from pursuing his chosen career or foreclosed from public and private employment in law enforcement." *Id*. at 297.

So too here. The Department did not "actually reveal[ ]" Plaintiff's identity let alone in "any defamatory public statement." *Id*. at 296. Indeed, the email notice went to Plaintiff's work account and only addressed to her. Email Chain (ECF No. 1-2 at 69). No one else was copied on that notice. *Id.* Plaintiff then forwarded the email to her personal email account and attached the notice as Exhibit 5 to her Complaint—i.e., it is Plaintiff who made her termination a public matter, not the Department. *Id*. . Given these facts, Plaintiff's "reputation-plus claim fails because [she] cannot establish that [she] suffered defamation[]" by the Department. *Id*. at 297.

Plaintiff's stigma-plus claim likewise fails. *See id*. She maintains the termination "will cause her the type of stigma that ruin[s] her significantly [and] impact[s] her ability to obtain future employment." Pl. Mot. at 16. Plaintiff argues she "is now seeking new employment, and has not received interest from any employer she has contacted." Compl. ¶ 42. These allegations are insufficient to meet the D.C. Circuit's requirement "to demonstrate the automatic exclusion or

10

broad preclusion" from pursuing Plaintiff's chosen career. *Langeman*, 88 F.4th at 297. Moreover, neither the Complaint nor motion specifies the types of the employment she sought only eleven days after her termination. *Id.* Accordingly, her "stigma plus" theory also fails.

### D. Plaintiff's Mandamus Claim Fails

Plaintiff also brings a mandamus claim. Compl. (ECF No. 1) ¶¶ 64-69. The Court may "compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff." 28 U.S.C. § 1361. "To qualify for a writ of mandamus, three conditions must be satisfied: (1) the mandamus petitioner must have no other adequate means to attain the relief he desires, (2) the mandamus petitioner must show that his right to the issuance of the writ is clear and indisputable, and (3) the court, in the exercise of its discretion, must be satisfied that the writ is appropriate under the circumstances." *Dhiab v. Obama*, 787 F.3d 563, 568 (D.C. Cir. 2015) (cleaned up). Mandamus is a "drastic" remedy, "hardly ever granted," and "is available only in extraordinary situations." *In re Cheney*, 406 F.3d 723, 729 (D.C. Cir. 2005).

Even assuming Plaintiff has no other adequate remedy, they do not even attempt to identify any mandatory duty owed to them under law. That duty "must be narrowly defined, and [] a plaintiff's legal grounds supporting the government's duty to [them] must be clear and compelling." *Id.* "It is well-settled that a writ of mandamus is not available to compel discretionary acts." *Cox v. Sec'y of Lab.*, 739 F. Supp. 28, 30 (D.D.C. 1990) (citing cases). Plaintiff does not identify any statute that creates a mandatory duty that Defendants owe to them that can be vindicated through mandamus. With the absence of a "clear and compelling duty under [a] statute [] [], the district court must dismiss the action." *Cheney*, 406 F.3d at 729.

**II.     Plaintiff Has Failed to Demonstrate She Will Suffer Irreparable Harm But For the Requested Preliminary Injunction.**

"Regardless of how the other three factors are analyzed, it is required that the movant demonstrate an irreparable injury." *Mdewakanton Sioux Indians of Minn.*, 255 F. Supp. 3d 48, 51 (D.D.C. 2017). "The basis of injunctive relief in the federal courts has always been irreparable harm." *Sampson v. Murray*, 415 U.S. 61, 88 (1974); *see also CityFed Fin. Corp. v. Off. of Thrift Superv.*, 58 F.3d 738, 747 (D.C. Cir. 1995). The Supreme Court's "frequently reiterated standard requires Petitioners seeking preliminary relief to demonstrate that irreparable injury is *likely* in the absence of an injunction." *Winter*, 555 U.S. at 22 (emphasis in original). "[I]f a party makes no showing of irreparable injury, the court may deny the motion without considering the other factors." *Henke v. Dep't of Interior*, 842 F. Supp. 2d 54, 59 (D.D.C. 2012) (quoting *CityFed Fin.*, 58 F.3d at 747); *see also Chaplaincy of Full Gospel Churches*, 454 F.3d at 297 ("A movant's failure to show any irreparable harm is . . . grounds for refusing to issue a preliminary injunction, even if the other three factors entering the calculus merit such relief."). And where a party seeks to change the status quo through action rather than merely to preserve the status quo, typically the moving party must meet an even higher standard than in the ordinary case: the movant must show 'clearly' that [it] is entitled to relief or that extreme or very serious damage will result." *Farris v. Rice*, 453 F. Supp. 2d 76, 78 (D.D.C. 2006) (collecting authorities); *see League of Women Voters v. Newby*, Civ. A. No. 16-236 (RJL), 2016 WL 8808743, at *1 (D.D.C. Feb. 23, 2016) ("This conclusion is bolstered by the fact that plaintiffs here seek not to maintain the status quo, but instead to restore the status quo ante, requiring this Court to proceed with the utmost caution.").

Here, Plaintiff has failed to demonstrate irreparable harm sufficient to warrant extraordinary injunctive relief. Although she characterizes the harm as damaging to her reputation (Pl. Mot. at 16), distilled to its core, Ms. Shechter's alleged harm is grounded on monetary damages

due to her termination and her fear that she may not obtain gainful employment as an attorney (Pl. Mot. 17). "Monetary injuries alone, even if they are substantial, ordinarily do not constitute irreparable harm." *Spadone v. McHugh*, 842 F. Supp. 2d 295, 301 (D.D.C. 2012) (citations omitted). Mere injuries, however substantial, in terms of money, time, and energy necessarily expended in the absence of a stay, are not enough. *Farris*, 453 F. Supp. 2d at 78. The possibility that adequate compensatory or other corrective relief will be available at a later date, in the ordinary course of litigation, weighs heavily against a claim or irreparable harm. *See Va. Petrol. Jobbers Ass'n v. Fed. Power Comm'n,* 259 F.2d 921, 925 (1958); *Sampson*, 415 U.S. at 94 ("the temporary loss of income, ultimately to be recovered, does not usually constitute irreparable injury"); *Wis. Gas Co. v. FERC*, 758 F.2d 669, 674 (D.C. Cir. 1985).

Furthermore, Plaintiff's alleged loss of income due to her termination (Pl. Mot. 17) falls "far short of the type of irreparable injury which is a necessary predicate to the issuance of a temporary injunction." *Sampson*, 415 U.S. at 91-92. That is true even if the plaintiff does not have enough financial reserves to offset the lost income: "[A]n insufficiency of savings ... will not support a finding of irreparable injury, however severely [it] may affect a particular individual." *Id*. at 92, n. 68. Indeed, courts have repeatedly noted that the loss of benefits, income, and reputation are insufficient to show irreparable injury. *Veitch v. Danzig,* 135 F. Supp. 2d 32, 36 (D.D.C. 2001); *Gilmore v. Int'l Union of Op. Eng'rs*, 899 F. Supp. 652, 658 (D.D.C. 1995).

Next, Plaintiff argues she will suffer irreparable harm because she must disclose her termination when she seeks to join the bar of another jurisdiction or employment which requires a background check. Pl. Mot. at 17. These arguments lack merit. Plaintiff has been a member of the New York State Bar since 2021 and neither the Complaint nor her motion even hints of her relocation to another state, which would necessitate seeking bar admission of that jurisdiction.

13

Moreover, neither her Complaint nor Motion specifies whether she had actually applied for any job that requires a background check. Without more, Plaintiff's alleged harms are merely conjecture. Indeed, it is established law that a movant cannot show "certain[] impending" injury when the asserted injury is based on a "speculative chain of possibilities," *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 410 (2013), or on "speculation about the decisions of independent actors," *id*. at 414. As the D.C. Circuit has cautioned: "Because of the generally contingent nature of predictions of future third-party action," a court should be "sparing in crediting claims of anticipated injury by market actors and other parties alike." *Arpaio v. Obama*, 797 F.3d 11, 23 (D.C. Cir. 2015).

Recognizing the law prohibits claims of financial damages to establish irreparable harm, Plaintiff pivots and argues her reputational damages rise to the level of irreparable harm. Pl. Mot. at 16 (citing *Jericho Baptist Church Ministries, Inc. v. Jericho Baptist Ministries Inc.*, Civ. A. No. 16-0647 (APM), 2016 WL 4487730, at *3 (D.D.C. Aug. 25, 2016)). *Jericho* does not help Plaintiff's irreparable harm argument and that case in fact bolsters the Department's contention here. In that case, the court denied plaintiff's motion for a restraining order based on reputational injury because plaintiff merely made conclusory assertion of reputational injury absent injunctive relief. *Id.* Further, in *Jericho,* the plaintiff claimed a reputational injury simply by producing a "deficiency notice" from the agency. The *Jericho* Court highlighted the notice itself did not demonstrate the requisite reputational harm without "proof" of "imminent harm." *Id*.

Similarly, here Plaintiff has only provided a termination notice without any proof of imminent harm or that she cannot be employed in her chosen field because the termination notice. In any event, as in *Jericho*, Plaintiff made only generalized allegations that her termination ruined her reputation that would prevent from obtaining future employment, which is insufficient to

14

warrant extraordinary injunctive relief. *Id.* at 7 (denying injunctive relief because plaintiff failed to offer proof that an injury is of such imminence that there is a clear and present need for equitable relief to prevent irreparable harm).

Plaintiff next points to the "reputation-plus" and "stigma or disability" theories to argue irreparable harm. Pl. Mot. at 17. But, as discussed above, *Langeman* forecloses her claims under both theories. Namely, Plaintiff's "reputation-plus" theory fails because she has not provided evidence showing the Department disseminated her termination publicly. *See Langeman*, 88 F.4th at 296 (dismissing reputation-plus claim because plaintiff failed to show the government publicly disclosed his termination). Her "stigma or disability" theory also fails under *Langeman*, 88 F.4th at 297, which "required that there be some statement of an attempt to obtain subsequent employment and a rejection for the job resulting from the alleged stigma or disability." *Id.* Here, Plaintiff simply has not shown she had applied for employment since her termination on February 13, 2025, and prospective employers rejected her employment applications because of the termination.

Under these circumstances, the Court should find Plaintiff has not demonstrated irreparable harm and deny her preliminary injunction motion entirely.

## III. The Public Interest and Harm to Third Parties Counsel Against Granting Interim Injunctive Relief.

The Supreme Court has stressed the importance of granting the government "the widest possible latitude in the dispatch of its own affairs." *Sampson*, 415 U.S. at 83. Granting Plaintiff's request for injunctive relief would severely compromise the Department's ability to make the most fundamental personnel decisions in dispatching its affairs. Plaintiff asks the Court to direct the Department to reinstate her. Having the Court intervene in this personnel matter at such a premature stage is contrary to public interest, because it seriously impedes a federal agency's

15

ability to handle personnel matters. *See generally Andrade v. Lerner*, 729 F.2d 1475, 1489-90 (D.C. Cir. 1984) (denying preliminary injunction motion seeking to prevent discharge prior to exhaustion of administrative remedies and noting courts' reluctance to interfere "in the sensitive area of federal employee relations."); *Sampson,* 415 U.S. at 83-84 (noting wide latitude given to government personnel decisions). It also would potentially encourage other federal employees to rush to court prematurely and use litigation as an end-run around the comprehensive administrative scheme established by federal statutes, such as the CSRA.

## CONCLUSION

For the foregoing reasons, the Court should deny the motion for preliminary injunctive relief.

Dated: March 7, 2025
Washington, DC

Respectfully submitted,

EDWARD R. MARTIN, JR., D.C. Bar #481866
United States Attorney

BRIAN P. HUDAK
Chief, Civil Division


By:   */s/ Benton Peterson*
BENTON PETERSON, D.C. Bar #1029849
Assistant United States Attorney
601 D Street, NW
Washington, DC 20530
(202) 252-2534

*Attorneys for the United States of America*

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| GAIL SCHECHTER,<br><br>Plaintiff,<br><br>v.<br><br>DOUGLAS COLLINS,<br>Secretary of Veterans Affairs,<br><br>Defendant. | Civil Action No. 25-0551 (RC) |

## [PROPOSED] ORDER

UPON CONSIDERATION of Plaintiff's motion for a preliminary injunction, Defendant's Opposition thereto, and the entire record herein, it is hereby

ORDERED that the motion is DENIED.

SO ORDERED:

_____   _____
Dated                                                           RUDOLPH CONTRERAS
                                                                         United States District Judge

1